GEORGE W. PORTER *v.* GREENBRIER QUARRY COMPANY.

[No. 26, April Term, 1931.]

*Decided June 10th, 1931.*

The cause was argued before Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Charles G. Watson,* for the appellant.

*George Henderson,* with whom was *Richard F. McMullen* on the brief, for the appellee.

Urner, J., delivered the opinion of the Court.

The testimony offered by the plaintiff in this case admits of the inference that he was struck and injured by a light motor truck, attached to the rear end of a larger truck, which passed him as he was walking, in the same direction, along the concrete shoulder of a public roadway. He testified that the leading truck "passed close by him," that "something bumped him from the back and after that he knew nothing for some time," and that he did not look back before the accident and "saw nothing hooked to the large truck." One of the witnesses for the plaintiff, who was following him on his way from the defendant's quarry, where both were employed, and where they had just finished their work for the day, stated that the plaintiff was ten or fifteen feet ahead of him and walking about the middle of the concrete shoulder on the right-hand side of the road, and that, as the front truck passed, the witness turned to look for a companion, and the next instant he saw the plaintiff "doubled up under the axle of the hind truck," which "was running on all four

wheels, probably four feet behind the lead truck." Another workman, who had just joined the last-quoted witness at the time of the accident, testified that he saw the plaintiff "going up the road about midways of the shoulder" and did not see him "do anything," but saw him under the rear truck "only a second or two" after the witness saw him walking in the course described.

It is undisputed that, if the plaintiff was in fact injured under the circumstances indicated in his testimony at the trial below, there would be a legally sufficient basis for the pending suit. Negligence in the operation of the defendant's truck could be rationally inferred from the action of the driver in guiding the front truck so close to the edge of the road, where the plaintiff was rightfully walking, as to expose him to danger of injury from an outward swerve of the truck which was being towed. It is clear also that contributory negligence could not be conclusively imputed to the plaintiff for a failure to take precautions against the possibility that another truck might be attached to the rear end of the one which was passing him closely but safely. *Biogini v. Steynen,* 124 Md. 369, 92 A. 806; *Mears v. McElfish,* 139 Md. 81, 114 A. 701.

The withdrawal of the case from the jury, of which the only exception in the record complains, is said in the appellee's brief to have been influenced by the view that the contradicting and impeaching evidence adduced by the plaintiff conclusively neutralized the probative effect of the plaintiff's testimony.

It was proved by the defendant that the plaintiff, while testifying before the State Industrial Accident Commission, in support of a claim under the Workmen's Compensation Act (Code 1924, art. 101, as amended), for the injury here in question, which was disallowed because the accident did not occur in the course of his employment by the defendant, stated that he attempted to climb on the leading truck as it was slowly passing, but fell to the ground and was run over by the rear truck, and thus sustained the injury for which he claimed compensation. A similar description of the acci-

dent was given by one of the defendant's employees who was on the seat of the rear truck, but was not steering it, as, according to his testimony, it was closely attached to the forward truck and was being drawn with its front wheels lifted above the road surface.

There was no denial by the plaintiff of his prior inconsistent testimony, but he asserted that he had no recollection as to what he stated at the hearing before the State Industrial Accident Commission, because it was not until later that his "mind cleared up right," from the effects of the accident. The wife of the plaintiff testified that for at least five or six months after that misfortune "he was out of his head," but his attending physicians, and the attorney who represented him before the commission, testified that his mental condition was normal at that period. The record of his examination before the commission tends to refute the contention that his mind was then impaired. There is properly no contention that the mistaken and unsuccessful proceeding before the commission precludes the plaintiff from maintaining this common-law action. 9 R. C. L. 962; 20 C. J. 21, 25; *Raast v. Morris,* 133 Md. 187, 104 A. 412.

While the evidence produced by the defendant was unquestionably strong, and was doubtless convincing to the trial court, it was offered in refutation of testimony of the plaintiff, which, if believed by the jury, would admit of a verdict in his favor. The question as to the legal sufficiency of the plaintiff's testimony, and of his right to have the case submitted to the jury, is not affected by the strength of the opposing proof, nor does the fact that the plaintiff made prior inconsistent statements disentitle him to have the jury decide as to the credibility of his testimony at the trial. According to the settled rule in this state, for the purposes of a ruling on a proposal for a directed verdict against the plaintiff, any testimony tending to support his right of recovery must be assumed to be true. It would be incompatible with that required assumption to give the contradicting and impeaching proof conclusive effect. The weight of the evidence may be considered on a motion for a new trial, but not on a prayer

demurring to the evidence as legally insufficient. These principles have been firmly established in Maryland by a long and uniform course of judicial decisions in numerous cases, including *Weitzel v. List,* 161 Md. 28, 155 A. —; *Friedman v. Hendler Creamery Co.,* 158 Md. 131, 148 A. 426; *Purdum v. Edwards,* 155 Md. 178, 141 A. 550; *General Automobile Owners' Assn. v. State, use of Penn,* 154 Md. 204, 140 A. 48; *Abuc Trading Corp. v. Jennings,* 151 Md. 392, 135 A. 166; *Clough & Molloy v. Shilling,* 149 Md. 189, 131 A. 343; *Taxicab Co. v. Hamburger,* 146 Md. 122, 125 A. 914; *Kelly v. Huber Baking Co.,* 145 Md. 321, 125 A. 782; *Daugherty v. Robinson,* 143 Md. 239, 122 A. 124; *Capitol Traction Co. v. McKeon,* 132 Md. 70, 103 A. 314; *Moyer v. Justis,* 112 Md. 220, 76 A. 496; *Mallette v. British-American Assur. Co.,* 91 Md. 471, 46 A. 1005; *Western Md. R. Co. v. Kehoe,* 86 Md. 43, 37 A. 799; *Jones v. Jones,* 45 Md. 144.

The appellee has cited cases in which testimony of a party or witness as to the result of an alleged observation has been treated as devoid of probative value because it was in conflict with unquestionable facts. For example, in cases of crossing accidents, the statement of the plaintiff that he looked for, but did not see, an approaching train or vehicle, which he must have seen if he had actually looked, has been held to be unworthy of belief. *Gitomir v. United Rwys. Co.,* 157 Md. 464, 146 A. 279; *Balto. & O. R. Co. v. Newton,* 137 Md. 21, 111 A. 481; *Evans v. Balto., C. & A. R. Co.,* 133 Md. 31, 104 A. 112; *Maryland Elec. R. Co. v. Beasley,* 117 Md. 270, 83 A. 157; *Northern Cent. R. Co. v. Medairy,* 86 Md. 168, 37 A. 796. It has been held in other cases, which the appellee cites, that, when the evidence upon which the plaintiff relies to prove the cause of the injury sued for is so inconclusive that no rational mind could infer from it the fact sought to be proved by it, the case may properly be withdrawn from the jury's consideration. *Royster Guano Co. v. State, use of MacDonald,* 130 Md. 170, 100 A. 104; *Brady v. Consol. Gas Co.* 85 Md. 637, 37 A. 263; *State, use of Hamelin, v. Malster,* 57 Md. 287; *Brinkley v. Platt,* 40 Md. 529; *Wellersburg, W. & N. Plank Road Co. v. Bruce,* 6 Md.

457. In *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244, 248, also cited by the appellee, the court, referring to conflicting statements of a witness as to the cause of the death under inquiry, said: "When a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion." The plaintiff's testimony at the trial of the present case was not in itself contradictory, or essentially lacking in probative effect, or contrary to facts which were undeniable. It was impaired, but not rendered nugatory, by proof as to the plaintiff's previous inconsistent narrative, and by other evidence for the defense. The problem arising from such a conflict of evidence should have been submitted to the jury for solution.

*Judgment reversed, with costs, and new trial awarded.*