GERTRUDE LUSK *v.* LEE EDGAR LAMBERT ᴇᴛ ᴀʟ.
[No. 11, October Term, 1932.]

*Decided November 30th, 1932.*

336

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Leonard Weinberg* and *Harry J. Green*, with whom were *David Friedman* and *Weinberg & Sweeten* on the brief, for the appellant.

*William D. Macmillan*, with whom were *Semmes, Bowen & Semmes* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

While crossing a street in Baltimore between intersections, the appellant, Mrs. Gertrude Lusk, was struck and severely injured by an automobile. The automobile belonged to Mrs. Annie E. Lambert, one of the appellees, and was driven by her son, Lee Edgar Lambert, the other appellee, whose testimony that he was not using it for any purpose or business of his mother was not disputed.

At the close of the evidence, Mrs. Lambert presented a prayer that there was not legally sufficient evidence of negligence offered against her, which, under the authority of *Wells v. Hecht Bros. & Co.*, 155 Md. 618, 142 A. 258, was properly granted, and removes her from further consideration in this opinion.

Both defendants submitted two prayers, A and B, for a directed verdict, the first for want of legally sufficient evidence of negligence, the second on the ground of contributory negligence of the appellant as a matter of law, both of which were granted and which are the subjects of this appeal.

According to section 209, article 56, of the Code (Act of 1929, ch. 224), "All pedestrians shall have the right of way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers. Between street crossings in such towns and cities, vehicles shall have the right of way"; but, the mere fact that a pedestrian is injured when crossing a city street between crossings, "while it is one of the facts to be considered on the question of his negligence, is not sufficient, standing alone, to establish negligence *prima facie;* to establish it, that is, in the absence of any other facts. No statute gives the fact that effect, and it would not logically follow, for a pedestrian has a right to cross the streets between crossings, and it is conceivable that a man might be injured while crossing with care and without contesting the right of way there." *Nelson v. Seiler,* 154 Md. 63, 76, 139 A. 564, 569.

The appellant, Mrs. Gertrude Lusk, on the evening of November 9th, 1929, about 7.30 o'clock, was taken by her son, William L. Lusk, in his automobile to do some shopping. On their return they stopped on the west side of Monroe Street, Baltimore, between Baker Street on the south and Presbury Street on the north, across the street from the appellant's house, No. 1641, located on the east side of Monroe Street. The block is 420 feet long, the appellant's house being about two-thirds of the distance from Baker Street. The son had taken the goods his mother had bought into her house, intending to return and go with her to a show. After the son had gone toward the house, his mother got out of the car and started across the street.

She said she walked around to the back of the car and stopped to see if there were any automobiles coming. No street cars on that street. "I got off the curb and walked to the edge of the back of the car so that I could see." "I looked north and south. I looked both ways." Saw one automobile; thought it was near Baker Street, on her right, and going north; "didn't notice any other automobiles." If there had been any, she would have seen them. "I walked out to the center of the street and stopped to leave the car go

by, and the car went by" (the one going north). "I stopped in the center of the street to leave this car go by that was going north and after it passed me I started to make two or three steps to continue to my home, and just then I was struck by a car going south." As stated in the record, "When she was standing there in the middle of the street, she could see into her own front door. Her son was in the house. She thinks her daughter, Anna, was standing in the door. * * * When she was standing in the middle of the street * * * it was light where she was standing. She knows that because there is a light in front of the door and she was nearer to her pavement than any place else. She was near to her side of the street while she was standing there. She was nearer to the east side than the west side." On cross-examination, she said: "She could see at least a block away up to Westwood Avenue, which was north of Presbury Street, and saw no automobile within the space. Then she walked across and she got to the center line of Monroe Street." Did not remember how far away the north-bound automobile was at the time, and after it passed she made "one or two or three steps." When it passed, she was "right about where the center line would be." As the car passed, "it was closer to the curb" than to her. "Q. Now then, you were right on the center line, about on the center line of Monroe Street when this car passed you by and you took two or three steps and you were struck? Is that correct? A. That is correct. Q. By the automobile that was coming south? A. Yes, sir. Q. Mrs. Lusk, while you were walking across to the center line of the street didn't you look to your left again at any time up to the time you got to the center? A. Of course I looked as I walked across the street. Q. As you were walking across the street then, from where you got out, back of your son's car, you were looking both ways, then, to your left and to your right? A. Of course. * * * And didn't see any automobile approaching."

The daughter, Anna, testified that she came to the door to admit her brother. As stated in the record, "She saw her mother before she closed the door. She saw her mother com-

ing across the street and did not close the door." "After my brother passed, my mother was standing in the middle of the street; she was just about in the center of the street, coming towards the center and then she stopped." "My mother was standing in the center of the street and I stood at the door waiting for her and I saw a car go past her going towards North Avenue, going north, and then after the car had gone past she took a few steps toward the house. She had taken two or three steps and then suddenly, just like a flash I saw a car strike her, and I didn't see her; just as soon as it hit her she was gone. I saw the car strike her." "The car was going south"; "I don't know what I done for the minute. I went back in the house. I was very frightened." "She started to go out, then realized she was not dressed and ran back into the house. She ran to the second floor and told her brother and sister what had happened. Her brother was then coming down the hall from the bathroom and her sister was just coming out of her room. They ran out while she slipped a dress on * * * and went downstairs. She did not see her mother. Her mother had gone." The appellee and Starkey, with the assistance of two persons, a man and woman walking by, took the appellant in the appellee's car to the West Baltimore Hospital.

The brother testified that he left his mother in the car and carried her bundles across the street to the house, "rang the door-bell and his sister immediately came to the door and let him in. He put his bundles on the kitchen table and then went upstairs to the bathroom. He was up there several minutes when his sister came upstairs screaming and he came out in the hall and she was as white as a ghost and couldn't talk. He and his other sister Betty, who was getting dressed, both rushed down outside, but the car had gone."

This is the evidence on which the appellant relies as legally sufficient proof of negligence to take the case to the jury. On the other hand, the appellees contend that it is so various and contradictory that, under the authority of *Slacum v. Jolley,* 153 Md. 343, 351, 138 A. 244, 248, it cannot be accepted as "the basis of a legal conclusion." *Cumberland*

& W. Transit Co. v. Metz, 158 Md. 424, 453, 149 A. 4, 565; Maryland & Pa. R. R. v. Tucker, 115 Md. 43, 52, 80 A. 688. We do not find it objectionable in this respect, as the mother and daughter both place the appellant at or beyond the driver's left, their right, of the center line of Monroe Street, beyond which, according to the appellant's contention, it would be a violation of the statute (section 209, art. 56 of the Code, Act of 1929, ch. 224) for the car to be driven, and, as such, evidence of proximate cause of the injuries sustained by the appellant. *Cumberland & W. Transit Co. v. Metz,* 158 Md. 424, 450, 149 A. 4, 565; *Greer Transportation Co. v. Knight,* 157 Md. 528, 538, 146 A. 851; *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161, 125 A. 779; *Gittings v. Schenuit,* 122 Md. 282, 90 A. 51.

The Act of 1929, ch. 224 (Code, art. 56, sec. 209), provides, amongst other rules of the road, that "All vehicles, motor, horse-drawn or otherwise, when being driven upon the highways of this State shall at all times keep to the right of the center of the highway upon all highways of sufficient width, except upon streets or roads where traffic is permitted to move in one direction only, and except when overtaking and passing another vehicle," etc.

Assuming the appellant's testimony that she was beyond the center line when the collision occurred to be true, the appellee's car, when it struck her, did so in violation of this statute under the conditions then and there testified to; as there was no evidence that it was impracticable to travel on the right or west half of the street, or that there was any other car approaching her, which the appellee's car was attempting to pass, as it would have had a right to do, it was negligence for the appellee's car to be over the center line when it ran into the appellant. It is true that the provision of the statute just quoted was intended to direct the course of vehicles upon the highways of the state, to prevent collisions and promote the safety of those driving thereon, and that it contains no reference to pedestrians, but another provision of the same section of the Code defines the respective rights of pedestrians and vehicles at and between street inter-

sections. While vehicles have the right of way over pedestrians between intersections, the latter are not denied the right to cross streets elsewhere than at crossings, though their rights and remedies may depend upon the degree of care and caution which they observe. *Nelson v. Seiler, supra; Webb-Pepploe v. Cooper,* 159 Md. 426, 151 A. 235; *Slaysman v. Gerst,* 159 Md. 292-300, 150 A. 728. With all the risks involved in crossing Monroe Street, when Mrs. Lusk had reached a place of apparent safety, it would be negligence for a car coming from her left to cross the center line and strike her under the conditions as testified to by her. Her story may not be true, and that of Lambert and Starkey may be the correct statement of the facts, but, if hers is true, and the demurrer prayers so assume, there is sufficient evidence of negligence for submission of the facts to a jury, which means that the defendant's A prayer should have been **refused.**

It may be said here, as in *Webb-Pepploe v. Cooper,* 159 Md. 426, 428, 151 A. 235, 236, that "the defendant's testimony submits a coherent theory of how the collision took place, but in considering the demurrer to the evidence, this version must be rejected; and all the testimony and rational inferences which support the plaintiff's right to recover must be accepted." And as stated in *Porter v. Greenbrier Quarry Co.,* 161 Md. 34, 37, 155 A. 428, 429: "It would be incompatible with that required assumption to give the contradicting and impeaching proof conclusive effect. The weight of the evidence may be considered on a motion for a new trial, but not on a prayer demurring to the evidence as legally insufficient."

The appellees rely upon *Webb-Pepploe v. Cooper, supra,* to support their B or contributory negligence prayer. The facts in that case and this are not at all the same. In that case the defendant's car, while shown to have been exceeding the speed limit as the evidence of negligence, was being driven where it had the right to be, on the right side of the street. The plaintiff came from behind another car and blindly, at night, attempted to cross the street in front of the

defendant's car approaching from his right, which, if he had looked, as was his duty, he would have seen and might have avoided. In the language of *Nelson v. Seiler,* he was "contesting the right of way there" with the one to whom the law gave it. If the uncontradicted evidence here had been that the appellant had been struck while on the west instead of on the east side of Monroe Street, the decision in *Webb-Pepploe v. Cooper* would have been controlling here, but, as the evidence of the appellees that Mrs. Lusk was struck by the right side of their car just as she emerged from in front of a car parked on the west side of the street, when every reasonable effort was made to stop their car after she came into view, is contradictory of her story as to when and where and how she was struck, the question of contributory negligence also becomes a question of fact for a jury, and the defendant's B prayer should have been refused.

> *Judgment in favor of Annie E. Lambert affirmed; judgment in favor of Lee Edgar Lambert reversed, and case remanded for a new trial against him, he and the appellant each to pay one-half the costs.*