ESSIE B. FISHER *v.* JOSEPH B. FINAN.
[No. 55, October Term, 1932.]

*Decided January 12th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Harold H. Hoffman* and *F. Brooke Whiting,* with whom was *Milton G. Urner* on the brief, for the appellant.

*Charles Z. Heskett* and *William C. Walsh,* with whom were *George R. Hughes* and *William M. Storm* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant, Essie B. Fisher, was struck and severely injured by an automobile driven by the son of its owner, Joseph B. Finan, the appellee. Mrs. Fisher, on the day of the accident, had been engaged in picking apples at Hancock, Maryland. After the day's work was over, she and others who worked with her started for their respective homes in a truck of their employer. When about seven miles west of Hancock on the National Highway, the truck was stopped on the extreme right, or north, side of the road. The right wheels were up to the north bank, off the hard surface of the road, and the left wheels were upon the concrete shoulder of the macadam road. The truck, when stopped, was immediately opposite the Woodmont Road, which leads into the National Highway from the south, but does not cross it. It was upon this road that Mrs. Fisher lived. The truck was stopped at the point named to let her and one other person, Mrs. Hoffman, off, so that they might take the Woodmont Road to their homes. The evidence is that Mrs. Fisher got out at the rear of the truck upon the concrete shoulder and Mrs. Hoffman followed her. It was while attempting to cross the National Highway at this point that Mrs. Fisher was struck by the appellant's automobile coming from the west or from the direction of Cumberland. The appellant brought suit against the appellee to recover for the injuries sustained by her resulting from the accident.

At the conclusion of plaintiff's evidence, two prayers were granted directing a verdict for the defendant, one because of a want of evidence legally sufficient to entitle the plaintiff to

recover, and the other because of plaintiff's contributory negligence. A verdict was rendered as directed, and upon it a judgment was entered for the defendant. It is from that judgment that the appeal in this case was taken. The only rulings of the court to be reviewed by us on that appeal are those upon the prayers above mentioned.

The well established rule of law, by which we are to be governed in deciding the question presented by the first of these prayers, is that "a prayer seeking to take the case from the jury, on the alleged ground of a total failure of evidence to support the plaintiff's case, will not be granted, if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source, but the weight and value of such evidence will be left to the jury." 2 *Poe, Pl. & Pr.,* p. 258, sec. 295A; *Taxicab Co. v. Emanuel,* 125 Md. 259, 93 A. 807; *Delmar v. Venables,* 125 Md. 477, 94 A. 89; *Hodges v. Balto. Engine Co.,* 126 Md. 315, 94 A. 1040; *General Automobile Owners' Assn., Inc., v. State, use of Penn,* 154 Md. 204, 140 A. 48; *Taxicab Co. v. Hamburger,* 146 Md. 122, 125 A. 914.

The evidence which is to be considered in the light of the aforegoing rule is as follows:

Mrs. Fisher, a woman forty-three years of age, testified that she got off the rear of the truck on the concrete and then stepped out from behind the truck. "I looked both ways and saw this car coming down the pike and I turned to step back. Q. Did you see the car when you looked around the corner? A. Not at first, no. Q. When did you see the car? A. I had to look if there was one coming out on Woodmont. I didn't see anything. Then I looked east on my own side of the road to see if any was coming west, and when I looked east then is when this car was coming. Q. How many steps did you take after you stepped off the truck on to the road? A. I will make oath I didn't take more than three steps after I got off the truck. Q. Did you have to step out from behind the truck? A. Yes, sir; I had to. * * * Q. In order to see what was coming? A. Yes; I couldn't see through it. Q.

Did you look to your left (the east) when you got off? A. Yes, sir. Q. Did you see anything coming either way? A. Not the first time I looked, no, but when I looked again I did. Q. Then what did you do? A. I turned around to step back. Q. How far had you got on the road? A. I am positive I was not in the center of the road. Q. You are positive you hadn't reached the center of the road? A. Oh yes, positive I hadn't reached the center of the road. Q. And you looked to your right? A. Yes, sir. Q. And what did you see coming? A. I saw this car coming. Q. Then what did you do? A. I stepped back. Q. How far from the truck were you when you were hit? A. Well, it seemed to me I could nearly reach the truck. Q. About a foot and a half you think? A. I wouldn't want to tell you a story, but I don't think it was any more than that." She testified it was a clear, bright day. She did not "know whether or not the sun had gone down, but I could see."

On cross-examination, when asked: "I want to ask you if you stated in your direct examination that you did not see the Finan car, that is, the car that struck you, the first time you looked up the road?" she replied: "I positively didn't tell you that. Q. Do you understand the question? How many times did you look up the road in the direction from which the Finan car came, that is, the car that struck you? A. Well, I looked twice. Q. And the first time you didn't see the car? A. No, because I looked over to see if there was one up that road, coming up that way. My own side of the road was the most important and when I looked up the pike I seen this car coming and I stepped back. Q. Then you didn't look up the road? A. I didn't look up the road? I positively told you I looked up the road. Q. When did you look up the road? A. When I stepped out from behind the truck. Q. You didn't look up the road before you got off, did you? A. I testified I positively said I stepped out from behind the truck and I looked up the road. Q. That was after you stepped out from behind the truck and you hadn't looked out from behind the truck up the road before you stepped from behind the truck? A. I told you positively

that I looked out from behind the truck both ways. Q. What did you see up the road when you looked up there after you stepped from behind the truck? A. What would you expect me to see but this car? Q. Did you see the car then? A. I stepped out and when I went to step back he hit me. Q. That was after you were out in the road? A. I positively was not in the middle part of the road. Q. You didn't look up the road before you stepped out from behind the truck, is that correct? A. I looked out when I stepped out from behind the truck; I looked up the road and saw this car coming and I stepped to turn back and it hit me. Q. You told us a while ago you took about three steps out on the road, that right? A. I said I didn't take more than three steps when I got off the truck. I couldn't have made many steps when I got off on the concrete * * * I got off the truck on the side towards the bank, as far away from the road as possible. I had no box to step on, I just jumped off and I went over to the side of the truck nearest the road; I stepped out from behind the truck and looked both ways. Q. You could have looked from the back of the truck, could you not, when you got out to the edge of it? A. Yes, sir; when I stepped out to the edge of the truck I looked both ways and I saw this car coming and I went to step back and it hit me. Q. Mrs. Fisher, are we to understand from your testimony that you had not quite reached the middle of the road when you saw this car? A. I positively was not to the center of the road, positively was not."

Harry Brooks, foreman at the orchard where Mrs. Fisher worked, testified that he drove the truck, in which Mrs. Fisher rode, and that he drove to a point in the road opposite Woodmont Road, and pulled over to the right as far as he could and stopped. When he stopped, he saw no car coming down from Cumberland; there was none in sight at that time. He did not know how long he had been sitting there when he saw the car approach. When those who were to get off at that point had done so, he was told to go ahead, which he did. "I was starting off when I noticed the car, coming from Cumberland." Brooks could not say how fast the on-coming

automobile was coming, but it was "at a good rate of speed." The defendant's car swerved to the left just as it passed the front end of the truck. The wheels were sliding when it passed and "it went within a foot of the concrete on the left hand side of the road; he (the driver of the automobile) started to put on his brakes when he was just opposite the front end of the truck, and passed the rear of the truck within about three feet of it." Brooks did not hear any signals from Mr. Finan's car, nor could he say whether any were given. On cross-examination, Brooks testified that from the place of the accident he could see up the road towards Cumberland five or six hundred feet. Also that he did not hear any one call from the truck "look out."

Pearl Bishop, who was in the cab of the truck, testified that she first noticed the car coming from the direction of Cumberland before Mr. Brooks started the truck. She said it seemed to be coming at a pretty good speed, by which she meant "it was not coming fast nor it wasn't coming slow." When asked how far the car went after the accident, she said: "I judge about one hundred feet."

Mrs. Theodore Hoffman, who was riding with Mrs. Fisher, and who also got off at the place where the truck stopped, testified that Mrs. Fisher got off ahead of her and was in the pike when she got there. "Just as I got to the edge of the truck the car struck her. I don't know how far towards the middle of the road she had gotten. I saw her when she was struck but I don't know how close to the truck she was but about one and a half to two feet." On cross-examination Mrs. Hoffman further testified that she could have touched Mrs. Fisher when the latter was hit, that "she had her back to me but I don't remember whether she had stopped or was still walking. She was walking ahead of me * * * I don't know whether she started out without looking or not. * * * She jumped off and I jumped off behind her; she had already started out across the road when I got off; my jump shook me a little and it took me a minute to get myself together, and in that time Mrs. Fisher had started across the road."

Charles S. Munson testified that he was sitting in the truck driven by Mr. Brooks, and was facing east. He saw Mrs. Fisher get off the truck and saw her proceed towards the edge of the truck. "She moved over and started to go across the road; I suppose she got in the neighborhood of nearly about half-way across to the best of my judgment. I didn't measure it or anything; I did not see her look before she started. Some one hollered and she turned around and started back and when she started back the car hit her. I would say she had gotten about halfway into the road. * * * I saw her hit by the car. * * * I couldn't say how close to the truck she was when she was hit but it was within a couple of feet. * * * I did not notice the speed of the car and I did not see it until it hit her; I heard no alarm sounded by the car; the car was on the left hand side of the road when it hit her; it was probably a couple of feet from the truck * * * it came over close to the truck."

Joshua Munson was riding in the truck at the time and saw Mrs. Fisher get out. "After she got out of the truck she looked down the road. She may have looked up the road when she got out of the truck and before she started across, but I didn't notice it, and then she looked down the road again and started across, and I judge she got within three or four feet of the other side when she turned and come back. I heard some one holler 'look out,' and then she turned quick and came back across. I did not notice that a car was coming toward us until it got to within about forty feet from where we were. I could not tell how fast it was coming but it was coming kind of fast * * * maybe about forty miles—might have been more than that, might have been less." When he first saw the car it was on the right-hand side, about forty feet away. "After that he seen Mrs. Fisher on the other side, and he (the driver of the automobile) turned then to avoid from hitting her I suppose, and she turned and was coming back and he kept coming over and she run in front of it. He came to within about three feet of the Brooks truck I suppose." The car stopped about ninety-nine feet from the point where it struck Mrs. Fisher. On cross-examination, Joshua

Munson testified that just as he "saw the Finan car the driver started to turn to the left." He thought the width of the road at the point of the accident was twenty-two feet. He saw Mrs. Fisher go across the road and when he first saw the Finan car it was turning to the left. "I think it was the left-hand fender of the Finan car * * * which hit. * * * After he hit Mrs. Fisher he started back to the right. She may have been three or four feet from the edge of the north side of the road when hit."

It is the contention of the appellant that this evidence was legally sufficient to take the case to the jury as tending to show the negligence of the defendant, while the appellee contends, as was contended in the recent case of *Lusk v. Lambert,* 163 Md. 335, 163 A. 188, 189, that under the authority of *Slacum v. Jolley,* 153 Md. 351, 138 A. 244, the evidence of the plaintiff, because of its contradictory character, was not legally sufficient to be submitted to the jury as tending to prove the fact stated.

Code (Supp. 1929), art. 56, sec. 209, provides that: "All vehicles, motor, horse-drawn or otherwise, when being driven upon the highways of this State shall at all times keep to the right of the center of the highway upon all highways of sufficient width, except upon streets or roads where traffic is permitted to move in one direction only, and except when overtaking and passing another vehicle, and unless it is impracticable to travel on such side of the highway, and in rounding curves shall keep as far to the right of the center of the road as reasonably possible. * * *"

The road in this case was not one where traffic is permitted to move in one direction only, nor was the defendant at the time of the accident passing another vehicle going in the same direction. The plaintiff and all others who testified as to the happenings of the accident said that, when the plaintiff was struck and injured, the defendant's automobile was well on the left or north side of the road. As to that fact there was no semblance of contradiction. The plaintiff testified that she, after getting from behind the truck, made no more than three or four steps towards the center of the road before she

426

saw defendant's automobile approaching, and it was then that she started back in the direction of the truck, when she was struck by the automobile at a distance of not more than two feet from the truck, or, as she expressed it, almost in reaching distance of the truck. In support of her statement as to the point she reached in the road before turning back, one other witness testified that she "got in the neighborhod of nearly about halfway across, to the best of my judgment," before she turned to come back.

It is true that the plaintiff, in giving a detailed statement as to how the accident occurred, was somewhat confused as to when she first looked in the direction of Cumberland; that is, whether she looked before or after starting across the road. But this confusion was thereafter cleared up or explained by her when she said that before crossing she first looked to the east, in the direction of Hancock. This she spoke of as her "own side," and the one of first importance, meaning thereby, we assume, that, while on the north of the center of the road, her danger was from motor vehicles coming from that direction; that it was only after crossing the center of the road that she was subjected to the danger of motor vehicles coming from the west. After looking to the east, she said she then looked to the west before starting across the road and saw no car approaching from that direction. But on looking again to the west, before reaching the center of the road, she saw the automobile of the defendant approaching, and then, upon some one calling to her from the truck to "look out" for the automobile, she started back in the direction of the truck and was struck by the automobile before reaching it. It is upon this confused statement made by her that the defendant bases his contention that her evidence is so contradictory that it "cannot be accepted as 'the basis of a legal conclusion.'" *Lusk v. Lambert, supra.*

But should we assume from the evidence that she did attempt to cross the road before looking to the right to see if a car was approaching from that direction, but later looked and saw defendant's automobile approaching in time for her to stop before reaching the center of the road, and she stopped

there at that point, where she should have been safe from motor vehicles coming from the west, and, while in that position, or in one further to the left of the road, she was struck by defendant's automobile where it had no right to be, and was injured as alleged, then she was entitled to have the case submitted to the jury upon the affirmative evidence offered by her. *Lusk v. Lambert, supra.*

It is true one witness offered by the plaintiff testified that she had proceeded beyond the center of the road and was three or four feet from the other side when she turned and came back, and it was, as the witness expressed it, because of this movement of hers that the defendant, he supposed, turned to the left and started to go between her and the truck on the left side of the road. This evidence is, of course, a contradiction of the plaintiff's evidence and the evidence of another offered by her, but such contradiction could not have the effect of withholding from the jury the evidence of the plaintiff and the other witness tending to prove her right to recover. It was for the jury, upon the submission of this evidence, to determine which of the witnesses they should believe.

The plaintiff may have been greatly surprised at the evidence of the contradictory witness, as to her position in the road, and it would certainly not be right to hold that his evidence should have the effect of preventing the evidence of the plaintiff, supported by another witness with equal opportunity of seeing and knowing plaintiff's position in the road, from being submitted to the jury. Our attention has not been called to, nor do we know of, any case where the court has gone to the extent of saying that his evidence should have had that effect.

It is also our opinion that the evidence adduced did not warrant the conclusion reached by the learned trial court that the plaintiff was guilty of contributory negligence as a matter of law.

For the reasons stated, the judgment appealed from will be reversed.

*Judgment reversed. New trial awarded.*
*Appellee to pay the costs.*