YORK ICE MACHINERY CORPORATION *v.* LYDIA SACHS

[No. 23, April Term, 1934.]

114

*Decided June 12th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Isaac Lobe Straus*, with whom were *James J. Carmody* and *Avrum K. Rifman* on the brief, for the appellant.

*Harry J. Green* and *Zanvyl Krieger*, with whom were *Weinberg & Sweeten* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The appellee, Lydia Sachs (plaintiff), who sues by her father and next friend, obtained a judgment against the appellant, defendant, the York Ice Machinery Corporation, for injuries sustained by her as a result of her having been struck by an automobile of the defendant.

There are three exceptions in the record, the first to the admission of a photograph of the scene of the accident, the second on the denial of a motion for a mistrial, and the third to the rulings adverse to the defendant on the prayers. As two of the rulings were on prayers for an instructed verdict, one to the legal sufficiency of the plaintiff's evidence and the other on the conclusiveness of the evidence of plaintiff's contributory negligence, and these involve a consideration of all of the evidence, the rulings on the prayers will be first considered.

On November 11th, 1932, the plaintiff was crossing from the south side of Frederick Road, from the southeast corner of Longwood Street and Frederick Road,

when she was struck by or collided with a car of the defendant which was being driven by John J. Chiappy, an employee of the defendant, who was on his way from Washington to Baltimore. The collision happened at or near the center of the Frederick Road, opposite or nearly opposite the intersection of Longwood Street with the southerly side of Frederick Road. Longwood Street is not a through street, it running into a dead end at Mount Olivet Cemetery, which binds on the northerly side of Frederick Road for several blocks. According to the decision in *Buckey v. White*, 137 Md. 124, 111 A. 777, it is an intersection within the meaning of the rule as to the respective rights of pedestrians and vehicles at street or road crossings.

The accident happened about 6:30 in the evening. It was dark, but it was a clear night. The automobile lights were on and the street lighted. The defendant's employee testified that he had a clear view in front of him. But that suggests one of the difficulties or dangers of night driving and that is, that a clear view is limited to the path of the rays of the headlights. From either side, even on well lighted streets, the view is more or less obscured and there is always the danger of pedestrians, unobserved, coming into the path of an automobile, and, because of the limited range of a driver's view at night, it behooves him to be more careful, especially as he approaches street intersections. The advantage at night is with the pedestrian, for he can see the headlights easier than the driver can see him.

The plaintiff, a child of six at the time of the accident, was accompanied by a girl of ten. They started across the Frederick Road from the south side at its intersection with Longwood Street, to meet the older girl's mother, who was coming home on a westbound street car. The companion, Eleanor Chaillou, testified that she had just put her "foot on the curb" on the north side of the street when she "heard the screeching of brakes," when she "turned around and seen the left front bumper throw Lydia forward, side forward." When struck by the auto-

mobile, she was "in the middle of the two car tracks." On cross-examination she said that when she (plaintiff) was picked up by "the man that hit her" she was "over in the other car track," "closer to" her than to the automobile. On redirect examination, asked what she meant by the other car track, she said the one "closer to the cemetery." She said before she started across the street she went "to the end of the curb" and started to cross the street "on the corner." The plaintiff herself was not at all clear or certain how far she had progressed across the street when she collided with the automobile, leaving her companion's testimony as the only evidence presented by her of the location, except that when Eleanor Chaillou asked the plaintiff to cross the street to meet Eleanor's mother she was "right on the corner." The plaintiff, asked on cross-examination whether she came from behind any car or any automobile, said, "No, I went across on the corner." "Q. Went across right on the corner? A. Yes."

The plaintiff testified that she looked to her right and left before crossing the street, and saw a street car "down by the bend" coming from her right and an automobile "at the end of the cemetery wall," at which there is a gasoline station, said by Eleanor Chaillou to be "a block away." Eleanor also said she looked both ways and saw the automobile to her left at the gasoline station but did not see a street car. The street car did not figure in the accident, and the other girl was probably right when she said she looked to the right and did not see a street car. The children were, according to their testimony, exercising the degree of care required before attempting to cross Frederick Road. *Merrifield v. Hoffberger Co.*, 147 Md. 134, 140, 127 A. 500; *Taxicab Co. v. Ottenritter*, 151 Md. 525, 530, 135 A. 587.

John J. Chiappy, employed by the defendant as a traveling engineer, who was driving the automobile at the time and place of the accident, testified: "I was traveling east on the Frederick Road. I was coming in the regular speed, and by the time I was passing Longwood Avenue, I presume half way between that street and the following

street, I noticed a girl, say about ten years * * * come out between some parking automobiles on the south (his right) side of the street. Immediately at the time I saw the girl I applied my brake and tried to turn my car toward right side as much as possible and I was lucky enough to miss the first girl. This girl had not quite run to the north side of the street; she run catacornered, when the second girl came out—from where I don't know, but I presume she must have come out between some of the parked automobiles. * * * It was impossible for me to do anything as she come out so quickly. My car at that time was pretty near slowed down, because I already had applied my brake. I missed the first girl. I cut my machine as much as I could toward the south side of the street. I couldn't do any more because a parking automobile was there. When I struck this girl to my left fender side or my left bumper side the girl fell here and I hurt her, I presume with my fender. I immediately stopped. I will say I stopped about five or six feet from her, got off on my left hand side at the door and by leaning down on the running board of the automobile I could pick up the girl and pass her to my companion. We immediately turned around and took her to the hospital. That is all what happened." Asked where the child was lying with reference to the car tracks, he said: "There are two car tracks, one going east and one going west. I picked the girl up between the track, between the two rail track on the south side." "Q. In other words, she was lying in the eastbound track? A. That is the idea." "The first girl that ran out from the south side of the street was going catacorner * * * traveling east * * * she was going across the street. She was running and never turned her face back, either." When he first saw the first girl, Eleanor, she was about fifteen or twenty feet, "maybe a little bit more," in front of his car. "When I discovered the little girl, she was right down in my left side of my car. If she run in front of the car or not I do not know"; and on cross-examination said when he first saw her she was "right down in front of my car."

At that time his car had slowed down to three to five miles an hour on seeing the first girl to cross the street, and he had then blown his horn.

The testimony of the driver, Chiappy, was substantially corroborated by David E. Schwartz, an erecting engineer of the defendant, who was seated with him in the defendant's automobile.

This is the evidence which the defendant argues is legally insufficient to sustain the charge of negligence preferred against it, and which should have resulted in the granting of its first prayer; or, assuming it to be legally sufficient, that it is uncontradicted evidence of the defendant's contributory negligence.

As usual in these cases, much depends on the respective rights of the parties under the rules of the road. Code (Supp. 1929), art. 56, sec. 209. By the next to the last paragraph of this section it is provided that "all pedestrians shall have the right of way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers. Between street crossings in such towns and cities, vehicles shall have the right of way." It having been decided by this court in *Buckey v. White*, 137 Md. 124, 111 A. 777, with respect to vehicles, that a road intersecting one side of another road but not crossing it, is an intersection within the meaning of section 209, it requires no discussion to decide that the same rule shall apply with respect to pedestrians at a street crossing such as we have here, where Longwood Street intersected the south side of Frederick Road, which was the side of the latter on which the defendant's employee was driving eastward, and the intersection was to his right, which is the direction from which the plaintiff was crossing Frederick Road.

The right of a pedestrian at a street crossing, on the assumption that this is a street crossing, which we so decide, would entitle the plaintiff to the right of way. The plaintiff and her older companion testified that they crossed Frederick Road at the "corner," while the de-

fendant's driver and his companion testified that they crossed between intersections. This difference in a disputed, vital, fact, of itself was a sufficient reason for the trial court to refuse the defendant's first prayer for an instructed verdict. *Merrifield v. Hoffberger Co.*, 147 Md. 134, 137A, 500; *Harrison v. Smith*, 167 Md. 1, 172 A. 273, the case of a child six years of age.

There is another "rule of the road" as prescribed in section 209, which applies to the facts of this case, we think of equal importance with the "crossing" rule, and that is: "All vehicles, motor, horse-drawn or otherwise, when being driven upon the highways of this State shall at all times keep to the right of the center of the highway upon all highways of sufficient width, except upon streets or roads where traffic is permitted to move in one direction only, and except when overtaking and passing another vehicle, and unless it is impracticable to travel on such side of the highway." The defendant's employee and driver, Chiappy, said the plaintiff was in the eastbound railway track when his car struck her. This would be on his half of the street. The plaintiff could not say how far she had progressed across the street, but the other girl testified that she had crossed the street and had one foot on the north curb when she heard the screeching of brakes, turned and saw the car hit the plaintiff, who was then between the east-bound and westbound tracks and that she was thrown between the rails of the west-bound track. This evidence placed the plaintiff almost exactly in the center of the street when she was struck. Chiappy is not at all clear as to where the two girls were at the time. He said he swerved his car to the right to avoid striking the older girl, Eleanor Chaillou, and in doing so hit the plaintiff, yet the older girl testified that she had crossed the street. If the girl's testimony is true, and the demurrer prayers so assume, then when Chiappy saw her he must have been on the wrong side of the road. If he was not on the wrong side of the road, then he should have seen both girls, as they had both crossed his right of way. In the light of this

confused statement of a material fact, it cannot be said that there is any clear and decisive act of negligence on the part of the plaintiff, or want of it on the part of the defendant's driver, about which the minds of reasonable men might not differ, and the court was therefore right in refusing the second, or contributory negligence, prayer as well as the first. *Merrifield v. Hoffberger Co.*, 147 Md. 134, 127 A. 500; *Lusk v. Lambert,* 163 Md. 335, 163 A. 188.

The defendant's objection to the plaintiff's first prayer is, in addition to the requirement that the jury find the infant plaintiff "was using ordinary care and prudence" that it did not also submit the question of her parents' neglect or want of care in order to entitle her to recover. In nearly all of the cases coming to this court in which children have been injured, the question of the parents' fault has been submitted to the jury, but an examination of this record does not show that it was raised below, and if not, it cannot be considered here. Code, art. 5, sec. 10, No mention of it is made in any of the prayers, either plaintiff's or defendant's, so that we assume it was not raised below. If it was omitted at the trial, this is not the place to bring it up for the first time. The case seems to have been tried by the respective parties on the theory that the other was negligent, without regard to parental control of the infant plaintiff. The plaintiff was two blocks away from her home, which was one block east of Longwood Street and a block south of the Frederick Road, and had been playing with the Chaillou girl from the time school was over for the day. Whether the plaintiff was going to school in the fall of 1932 does not appear from the record; she was in the first grade in 1933, when the case was tried. In the most recent case of the kind in this court, *Harrison v. Smith,* 167 Md. 1, 172 A, 273, the plaintiff, a child of six years, was on the way from school when she was injured at or near a pedestrian crossing. The claim and defense were the same as in this case, the only difference being the difference between daylight and darkness. In that case the defendant of-

fered a prayer for an instructed verdict on the ground of the parent's contributory negligence, which was refused by the same judge who sat in the instant case. It was the only prayer presenting the question of the parents' neglect or responsibility, but was not pressed or argued on appeal. If the contention now made by the defendant means anything, it is that because the plaintiff was allowed to wander from her home and while so absent, she could not recover for injuries sustained by her from another's negligence. This is not the rule. If the child be so young as not to be able to take care of itself, then parental neglect, resulting in injury, may be imputed to the child. *United Railways & Elec. Co. v. Carneal*, 110 Md. 211, 72 A. 771; *Caroline County v. Beulah*, 153 Md. 221, 138 A. 25. The law as stated in *Baltimore City Pass. Ry. Co. v. McDonnell*, 43 Md. 534, 551, and always cited in this court in children's personal injury cases, is that "a child, so far as he is personally concerned, is to be held only to such degree of care, as ought to be reasonably expected from children of his age and intelligence. * * * Nor will the plaintiff be prevented from recovering, in consequence of the negligence of its parents, if the jury shall find that the consequences of such negligence could have been avoided by the exercise of ordinary care and prudence, on the part of the defendant or its agents." But, as we have said, the question not having been raised at the trial, cannot be presented here, where to recognize it would amount to a request of this court to hold as a matter of law that the failure of the parents to keep a six year old child at home, or to be with her when she left the home, would be conclusive evidence of contributory negligence. For this reason the failure to submit the question of the parents' negligence is not reviewable and, with legally sufficient evidence of the defendant's negligence, not error.

The defendant also objects to the plaintiff's first prayer because it states that if the jury, as one of the facts, found that the plaintiff was crossing the intersection of Frederick Avenue and Longwood Street from the south to the

north corner thereof, at the usual pedestrian crossing, and that the sole, direct, and proximate cause of the plaintiff's injuries was the failure of the driver "to give the right of way to the infant plaintiff," there would be the right to recover. This is based on the theory that the plaintiff testified that she left the south sidewalk on Frederick Avenue at the mail box and fire alarm, which were six feet east of the building line on Longwood Street. Neither the plaintiff nor her companion testified to that as the point from which they left the sidewalk to cross the street. What they did was to identify the corner by the mail box and fire alarm to distinguish it from the southwest corner, on which a store was located. There was no error in instructing the jury that if they found (as the girls testified) that they crossed "from the south to the north corner at the usual pedestrian crossing," the plaintiff had the right of way. *Barker v. Whitter,* 166 Md. 33, 170 A. 578. There was no "north corner" nor any evidence that there was a "pedestrian crossing," but the instruction was correct because the intersection of the north end of Longwood Street with the south side of Frederick Road is a crossing or intersection within the meaning of section 209 of article 56 of the Code (Supp. 1929).

The plaintiff's second prayer was practically a condensed form of the first, and what has been said of the one could apply to the other.

The defendant's sixth prayer was granted with a modification or insertion by the court to which it excepted. The prayer began: "The jury are instructed that under the automobile laws of Maryland, all motor vehicles have the right of way over pedestrians between street intersections," to which the court added: "(But the aforegoing statement does not mean that pedestrians are necessarily negligent in crossing streets diagonally, or between intersections, but it means that they must be more careful to avoid being injured)." To baldly state that the motorist has the right of way between intersections could mislead a jury into the belief that a pedestrian always crosses

elsewhere than at a regular crossing at his peril; that otherwise he must suffer the consequences of his failure to observe the rule; and that this determines the negligence *vel non* of the participants in a collision.

. In defining the rights of motorists and pedestrians between crossings it is said, in the opinion of Judge Digges in *Slaysman v. Gerst,* 159 Md. 292, 300, 150 A. 728, 732; "The difference between accidents at and those between regular crossings is that in the latter the rule of ordinary care requires the motorist to exercise less, and the pedestrian more, care to avoid injury." See *Nelson v. Seiler,* 154 Md. 76, 139 A. 564; *Webb-Pepploe v. Cooper,* 159 Md. 426, 430, 151 A. 235; *Shaivitz v. Etmanski,* 164 Md. 125, 164 A. 169; *Lusk v. Lambert,* 163 Md. 337, 163 A. 188. The modification of the defendant's sixth prayer was, in our opinion, a fair comment on the meaning of what otherwise might have been a misleading instruction.

The defendant's eighth prayer was what is commonly known as the "unavoidable accident" prayer. and had no application to the facts of this case. A similar prayer was so fully discussed by Judge Urner in *Harrison v. Smith,* 167 Md. 1, 172 A. 273, that the mere reference to what was there said is sufficient here.

Any further discussion of the rulings on the other prayers in our opinion is unnecessary, except to say that we find no error in them as applied to the facts of this case.

The first exception was to the introduction in evidence of a photograph of the scene of the accident. As this is a matter which rests in the sound discretion of the trial court, its ruling will not be disturbed, in the absence of anything in the record showing abuse of such discretion. *Snibbe v. Robinson,* 151 Md. 658, 135 A. 838; *Hensel v. Smith,* 152 Md. 385, 136 A. 900; *Nelson v. Seiler,* 154 Md. 63, 139 A. 564.

The second exception was to the refusal of the court to grant a motion for a mistrial because Chiappy, the defendant's employee and driver, had stated on cross-examination, in response to questions as to whether he had reported the accident to the automobile commission-

er, that he had reported it to the insurance company, and he said it twice before the defendant made its motion and took its exception, and even after the court read the statute (Code, art. 56, sec. 196) requiring such reports to the commissioner, he answered twice that the "insurance took care of it," evidently on the theory that he had to excuse himself for not following the statute.

It has been decided so frequently by courts everywhere, that any suggestion from the plaintiff or his witnesses that the defendant is insured will, on motion of the defendant, promptly result in a mistrial and a continuance of the case, that it is not necessary to here review the authorities. Then this court in *International Company v. Clark,* 147 Md. 34, 127 A. 647, so expressed its opinion of the injection of insurance into personal injury cases that there is no need to look elsewhere. In the instant case it was brought in by an unresponsive answer to questions put to the defendant's chief witness, with no apparent intention on the part of plaintiff's counsel to inform the jury that the plaintiff was insured. The offense which we find, and which was not objected to, was that the witness was asked whether he had reported the accident to the commissioner of motor vehicles as required by the statute. Whether he was negligent or careful could not be proved or disproved by the report or failure to report the accident, and the inquiry along that line should not have been pursued. There may be circumstances under which evidence as to what the report, if made, contained, is admissible for the purpose of proving an admission or to affect the credibility of a witness if he has made contradictory statements, but the fact of a report or no report has no relevancy when the inquiry is directed to the issue of negligence as a fact. It went in, however, without objection and is not, therefore, available to the defendant on appeal. The injection of the insurance feature came from the defendant's actor in the case and, for the reasons set out in *International Co. v. Clark,* supra, a reference to which is sufficient, the ruling of the court on the motion to withdraw a juror and declare a mistrial will be affirmed.

*Judgment affirmed, with costs.*