GEORGE A. THURSBY *v.* GEORGE L. O'ROURKE

[No. 67, October Term, 1941.]

224

*Decided January 13, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*William L. Marbury, Jr.*, and *Jesse Slingluff, Jr.*, with whom were *L. Wethered Barroll* and *Marbury, Gosnell & Williams* on the brief, for the appellant.

*Michael J. Manley*, with whom was *David J. Markoff* on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

On December 6, 1940, the appellee, George L. O'Rourke, filed a suit in the Superior Court of Baltimore City against G. Roberta Thursby and her son, George A. Thursby, for the recovery of damages as the result of having been struck and injured by an automobile owned by the said G. Roberta Thursby, and being driven by the said George A. Thursby. At the trial of the case, the court granted a prayer directing a verdict for the said G. Roberta Thursby. A verdict for $13,500 was awarded the appellee, the said George L. O'Rourke, against the appellant, George A. Thursby. From the judgment on that verdict, this appeal was taken.

According to the declaration, and the proof, on October 4, 1940, about 8.30 P. M., the appellee approached a taxicab which had stopped near the east sidewalk of York Road, a short distance from the intersection of York Road and Arlington Avenue, and attempted to engage the taxicab to take him to another part of the city. The taxicab was engaged, but just about that time another taxicab came out of Arlington Avenue and turned south on York Road, and stopped on the west side of York Road opposite the appellee, who was standing on the east side of York Road. The appellee testified: "I then walked around in front of the Yellow Cab. I looked up and down the York Road to see if there wasn't any traffic coming up northbound and then when I got over in between the two car tracks traffic started to come down south and I had to stop, so I stood there and there were about eight or ten cars passed me on the way down and this car, that is, the defendant's car came out and hit me, and after he hit me I did not know anything. He came out of line. He was going down south on the York Road. The other cars that were going south—some of them went by two together, alongside of one another and that would put one over near the car track, and others went by and they were single. I was standing in front of the beauty parlor. I had crossed the two northbound rails, that is, the easternmost rails, and I stopped between the southbound and northbound rails. Before I started across the street I looked up and down and there was no northbound traffic. * * * At the time I was struck the defendant's automobile was southbound and he pulled out behind another car and came over and hit me. * * * I couldn't get out of the way, it was right on top of me."

On cross-examination the appellee said: "When I first saw the automobile, driven by the defendant, going south on the York Road, it was about five or six feet away from me. * * * At least that is when I

knew I was going to get hit, that is how close it was to me; I knew I wasn't going to get out of the way. * * * It was right in front of me on the side of the southbound track. * * * You are about as far away as when I seen it heading over." It was agreed that the distance was fifteen feet. Further testifying the appellee said: "When I got out between the two car tracks I had to stop. I stood right there; I didn't go any further. * * * Traffic was moving right swift. * * * It (the appellant's car) was close to the car track. It was on the other side of the southbound track. It wasn't in the track, it was on the outside. * * * It was right close to the rail and there was another car on the right-hand side of that one. * * * They were coming two abreast, and this car pulled out from behind it and came over in the car track."

The witness Sullivan testified he saw the appellee standing between the north and south bound tracks, but was not looking at him when he was hit. Bowinkelman, the driver of the cab to which the appellee intended to go, saw him standing between the tracks, with traffic passing in both directions, but did not see him when he was hit, because of traffic passing in double lines between the witness and the appellee.

The only witness who saw the accident, testifying for the appellant, were the appellant, George A. Thursby, and the two young ladies who were in the car. Thursby, who is nineteen year of age, testified he was driving the car, "not going any place in particular. * * * I was going south on York Road, averaging about thirty miles an hour. * * * I was straddling the outer rail of the southbound street car tracks. Just after I passed Arlington Avenue this gentleman stepped out from behind this cab and walked—darted right into the side of my car. I jammed the brakes and swerved away from him, and stopped and pulled over to the curb on the west side. * * * The only car that was on my side going down was the one that had passed me. My

automobile was in good condition as to brakes and headlights. After I saw Mr. O'Rourke for the first time my car went about fifteen feet before it stopped, because when I saw him I jammed on my brakes and swerved to the right. He was about five feet away from me when I first saw him.

On cross-examination, Thursby testified: "When I first saw Mr. O'Rourke he was moving faster than walking, but he wasn't running. He was going about a trot. * * * He was in the middle of the easternmost (northbound) car tracks. I was straddling the westernmost rail of the southbound car track. My left wheels were between the rails of the southbound car track and my right wheels were west of the rails between the rails and the curb. * * * I didn't go into him, he went into me. I saw him about five feet away from me." The two young girls, each seventeen years of age, gave almost an identical version of the accident as did Thursby, except that both made contradictory statements in direct and cross-examination in reference to the distance the appellee was away from the appellant's car just before he was struck, and as to whether he was walking, trotting or running.

The proof is that York Road at the scene of the accident is well lighted from street lamps and shop lights. At the point of the accident it is fifty-four feet nine and one-half inches between curbs. That space is divided, twenty-seven feet five inches between the west curb and the westernmost car track running south; five feet four and one-half inches between the two southbound car tracks; four feet eight and one-half inches between the north and south bound car tracks; five feet four and one-half inches between the northbound tracks, and eleven feet eleven inches between the northbound tracks and the east curb.

The exceptions are to the granting of the appellee's first, second, fourth and fifth prayers, and in refusing appellant's B, C, fourth, fifth and sixth prayers.

228

The appellant's C prayer was a demurrer to the evidence, and the B prayer would have instructed the jury that the appellee was guilty of negligence, directly contributing to his injury, and direct a verdict for the appellant.

Both of those prayers were properly refused. The evidence on the part of the appellee, and the appellant, is in conflict as to exactly how the accident occurred, and it was for the jury to determine which was the correct version. The court may not reject one, and accept the other, that must be left to the jury. "The well-established rule of law, by which we are able to be governed in deciding the question presented by the first of these prayers is that a 'prayer seeking to take the case from the jury on the alleged ground of a total failure of evidence to support the plaintiff's case, will not be granted, if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source, but the weight and value of such evidence will be left to the jury.'" *Fisher v. Finan*, 163 Md. 418, 420, 163 A. 828. The contributory negligence, prayer B seems to have been offered on the theory that a pedestrian crossing a street between intersections at once is guilty, as a matter of law, of such contributory negligence which will prevent recovery. That is definitely not the law. A pedestrian crossing a street between crossings is not disobeying the law. As was said in *Ebert Ice Cream Co. v. Eaton*, 171 Md. 30, 35, 187 A. 865, 867, "the mere fact, however, that a pedestrian crosses a street between intersections (*Legum v. State*, 167 Md. 339, 173 A. 565; *Lusk v. Lambert*, 163 Md. 335, 163 A. 188; *Nelson v. Seiler*, 154 Md. 63, 139 A. 564), or that a motorist crosses the center line of a street (*R. & L. Transfer Co. v. State*, 160 Md. 222, 153 A. 87), is not necessarily negligent; it is what either does or both do under such circumstances that determines the question of negligence."

The testimony of the appellee, and that of the ap-

pellant, and his witnesses, as to how the accident occurred; where the appellee was standing; whether he was walking, trotting or running, and whether the car pulled out from behind another car and hit the appellee, is in direct conflict. Therefore, it was for the jury to determine, from all of the testimony, the true facts, because it is upon the facts as found by the jury that it must be determined whether the appellee was guilty of any acts of negligence contributing to his injury. Contributory negligence always depends upon the facts of a particular situation. As stated in *Yockel v. Gerstadt,* 154 Md. 188, 189, 140 A. 40, "No absolute rule as to what constitutes contributory negligence can be promulgated which would be applicable to all cases, because it, like primary negligence, is relative and not absolute, and being relative, it necessarily depends upon the particular circumstances of each case." Also the B prayer was fully covered by the appellant's third prayer which was granted.

The appellant's fourth, fifth and sixth prayers were all defective in that they entirely ignored the evidence on the part of the appellee that he was standing in the space between the north and south bound car tracks, and the appellant's car came over to that place and struck him. The appellant's fifth prayer would have instructed the jury that even though the appellant's car struck the appellee while he was standing. between the two street car tracks, he had the right of way regardless of where he drove his automobile in respect to the regular course of traffic on that street. Even between crossings, failure to drive on the right-hand side of a street in Baltimore, as required by a city ordinance, is strong evidence of negligence on the part of the motorist, and a motorist driving on the wrong side of the street must be unusually carefully and loses his right-of-way over pedestrians. *East Baltimore Transfer Co. v. Goeb,* 140 Md. 534, 118 A. 74; *Greenbaum v. Costa,* 137 Md. 524, 113 A. 79. The appellant's sixth player assumed that there was evidence in

the case to show that north and south bound traffic customarily travel over all of the bed of York Road to the east and west of the portion between the two car tracks. There was so such evidence in the case. Also, the prayers failed to instruct as to the duty of motorists, even though he may have the right of way, to observe that his way is clear, and avoid, if possible, injuring anyone unexpectedly entering his right of way. The appellant's fourth, fifth and sixth prayers were properly refused.

The appellee's first prayer is the ordinary prayer, in accepted form, merely instructing the jury that if they found the injury to appellee resulted from want of ordinary care on the part of the appellant, and not from want of ordinary care on the part of the appellee, the verdict should be for the appellee. The prayer was properly granted. *Epstein v. Ruppert*, 129 Md. 432, 440, 99 A. 685; *Riley v. State*, 140 Md. 137, 142, 117 A. 237. The appellee's second prayer merely instructed that the burden of proof of contributory negligence is upon the appellant. It was properly granted. *Consolidated Gas Electric & Power Co. v. Rudiger*, 151 Md. 226, 238, 134 A. 326. The appellee's fourth prayer is the usual, and approved, damage prayer in cases of permanent injury. It was supported by the evidence in every respect, and therefore properly granted. *Brown v. Patterson*, 141 Md. 293, 118 A. 653.

The appellee's fifth prayer, to which there is no special exception, is fully supported by evidence, and correctly states the law. The universally accepted rule, as before stated, is that at street crossings the pedestrian has the right of way over motorists, and between street crossings motorists have the right of way over pedestrians. But in each instance both, regardless of who has the right of way, have imposed upon them the duty to use reasonable care and diligence to avoid injuring anyone who, although carelessly, may be in the others' right of way. At street crossings a greater degree of care is required of motorists, and between

crossings a greater degree of care is required of pedestrians. For that reason, in any particular case, it generally becomes a question for the jury, under proper instructions, to determine, from all of the evidence, which of the contending parties was guilty of the act of negligence directly causing the injury. The mere fact that a person places himself in a dangerous place does not relieve another of the duty to use proper care to avoid injuring him.

York Road at the scene of the accidence is fifty-four feet and nine and one-half inches wide, and the westernmost rail of the southbound car track is within one inch of being in the center of the traveled portion of the street. According to the appellant's own testimony he was straddling that rail, and consequently was over the center line and partly in the northbound traffic lane. The distance of twenty-seven feet and five inches between the rail he says he was straddling and the west curb would afford ample room for four cars abreast, or one car parked at the curb and three traveling without the necessity of straddling the car track; or in passing another car, to go over to the space between the north and south bound car tracks. The appellant's testimony that he was not passing another car makes it hard to understand the reason for straddling the car rail. However, the prayer submitted the version of the accident as given by both the appellant and the appellee, and also the question whether the appellant, by the use of reasonable care and diligence after he saw the appellee, or by the use of reasonable diligence might have seen the appellee in a position of danger, could have avoided striking him. The fifth prayer was properly granted. *Lusk v. Lambert,* 163 Md. 335, 163 A. 188; *Fisher v. Finan, supra; Ebert Ice Cream Co. v. Eaton, supra.*

> *Judgment affirmed. The appellant to pay the costs.*