THE UNITED RAILWAYS AND ELECTRIC COM-
PANY OF BALTIMORE *vs.* V. RUSSELL RILEY.

*Carriers—Injury from Runaway Car to Passenger Standing on
Rear Platform of Another Car on the Same Track—
Contributory Negligence—Instructions to
Jury—Evidence.*

In an action by a passenger against a carrier to recover dam-
ages for a personal injury, it is not necessary that the defense
that the passenger was guilty of contributory negligence
should appear from the evidence adduced by the defendant.
If the plaintiff's own evidence shows that he was negligent
that is a bar to the action.

Consequently, in a case where the inference of plaintiff's con-
tributory negligence could be legally drawn from his testi-
mony, it is error to instruct the jury that from the fact of the
injury to the passenger, a presumption arises that it resulted
from the carrier's negligence, and that the passenger is enti-
tled to recover unless the defendant shows that the injury
could have been avoided by the exercise of ordinary care on
the part of the plaintiff.

Plaintiff got upon the rear platform of defendant's electric rail-
way street car, which was standing still, and just afterwards,
while he was about to enter the car, in which there was room,
and as the car started, an unmanned runaway car on the same
track crashed into the platform on which the plaintiff was
standing, facing towards the front and not aware of the dan-
ger, and injured him so severely that it was necessary to cut
off one of his legs. *Held,* that since the jury could have found
from the plaintiff's evidence that he was negligent in remain-
ing on the platform when he had had time to go inside the
car, it was error to instruct the jury that if they found that
the plaintiff was a passenger on one of defendant's cars and
was injured by a collision between that and another of defend-
ant's cars moving on the same track, then the presumption is

that the injury resulted from the negligence of the defendant, and plaintiff is entitled to recover unless the defendant shows that said injury did not result from its negligence, or that the accident could have been avoided by the exercise of ordinary care on the part of the plaintiff.

The fact that a passenger stood on the rear platform of a street electric railway car when there was room for him inside the car, and was injured in consequence of being in that position, does not constitute contributory negligence as matter of law which bars a recovery of damages for the injury, unless that position on the platform exposed him to an obvious danger. Generally in such cases, the question whether the passenger was guilty of contributory negligence is one of fact for the jury.

When the plaintiff testifies that he was standing on the platform of a car only for a moment and was about to go inside, but before he could do so the injury to him happened, the defendant has no right to have the jury instructed that plaintiff cannot recover if he took an exposed and dangerous position on the car, and was injured by reason of his taking such position.

Evidence that before receiving the injury for which the action was brought, the plaintiff had made arrangements to go into a certain business is not admissible.

In such action, evidence that the plaintiff had married after the accident is not competent, but the admission of such evidence is not a material error in a case when the jury was properly instructed as to the measure of damages.

*Decided January 13th, 1909.*

Appeal from the Baltimore City Court (SHARP, J.), where there was a judgment on verdict for the plaintiff for $10,000.

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Joseph C. France* and *J. Pembroke Thom* (with whom was *Edwin H. Brownley* on the brief), for the appellant.

*William Colton,* for the appellee.

THOMAS, J., delieved the opinion of the Court.

V. Russell Riley, appellee and plaintiff below, who lived at 648 Columbia Avenue, in Baltimore City, when returning from a visit to some friends in Pikesville, late at night on December 15, 1905, got off one of the cars of the appellant at the corner of North and Linden Avenues, to take a John Street car going to Columbia Avenue. It was cold, and he went into a drug store and got some cigars and walked up North Avenue smoking while waiting for his car, but not seeing one and seeing a Madison Avenue car standing near Wegner's restaurant or saloon, several doors below the corner, he hurried and got on it, and while he was on the rear platform of the car it was struck from the rear by what is called in the evidence a "runaway car," with no one in charge of it and when running rapidly on the same track in the same direction as the car he was on, and he sustained injuries which necessitated the amputation of one of his legs a few inches below the knee, and this suit was brought to recover for such injuries,

The grounds of the defense were that he was guilty of contributory negligence in standing on the platform of the car. and that he assumed the risks to which his position exposed him.

The trial resulted in a verdict and judgment in favor of the plaintiff for $10,000.00, from which judgment this appeal was taken.

The record contains three exceptions to the rulings of the Court on the evidence, and one exception to the granting of the plaintiff's two prayers, the rejection of defendant's first, second, third, fifth, sixth, seventh, ninth, tenth and eleventh prayers, and the overruling of defendant's special exceptions to plaintiff's prayers. The only exceptions how-

ever relied on and pressed in this Court are the exceptions to the ruling of the Court on the evidence, and to the granting of plaintiff's first, and the rejection of defendant's sixth, ninth, tenth and eleventh prayers.

Plaintiff testified that: "He ran to get on the car and got on, but before he could throw his cigar away or get inside, some one jumped on the rear end of the car, and holloaed and pulled the bell and before he knew it there was an awful crash. The car was still when he got on. His position was on the back platform of the car facing the motorman, looking inside the car, about to walk in. He did not have time to throw his cigar away or get inside the car before someone jumped on and holloaed and at the same time rang the bell and before he knew it there was a crash." And on cross-examination he said he ran back of the car and got on because it was the last car that night going down, and that he still had the cigar with him; that he didn't have time to take any position, and had just gotten on the car, was standing facing—"I was looking inside the car;" that he was standing on the platform looking inside the car; that he guessed he was smoking; that he could not tell how many people were in the car; that he saw the conductor, who was standing up in the front part of the car; that no one else was there that he knew of; that the conductor was not on the back platform or at the back door; that he did not have time to see how many people were in the car, which was not crowded, and that "he guessed there was plenty of room inside." That he had been around cars a good deal in Baltimore for ten years, but never knew of any notice or sign in the cars warning people against standing on the platform because it was dangerous, and that "those so doing assumed the risk," but that he had seen signs prohibiting smoking inside the car, and that he knew how to read. That he didn't know whether it was Rosenheim who holloaed, but that somebody holloaed, and at the same time jumped on and pulled the bell; that "everything was all confusion at the time," and that he, plaintiff, was "about opposite the door then, about going in-

side the car," and that he knew nothing about the runaway car until it struck the car he was in.

Plaintiff's witness, Herford, says that the car plaintiff was on was standing on Madison Avenue, in front of Wegner's Saloon, the fourth door from the northeast corner of Madison and North Avenues, and that he saw someone get on the car ahead of the plaintiff who went inside the car, and was about to take his seat when the accident happened; that the conductor was in the front part of the car, and had something in his hand, and witnesss thought he was writing; that he saw the runaway car pass the northwest corner, and saw plaintiff on the platform of the car that was struck; that he saw a man who came out of Wegner's saloon, got on after plaintiff, and that after witness holloaed he jumped off. That plaintiff could have gotten inside the car and taken a seat; that Rosenheim got on the car a few minutes after plaintiff; that plaintiff was standing on the left hand side of the platform of the car facing the motorman; that witness holloaed loud, and Rosenheim, the man who got on the car after the plaintiff, jumped off but he could not say positively how long Rosenheim was on the car before he jumped off; that he imagines that it was not more than a couple of minutes "if it was that much," it was a very short time.

Plaintiff's witness, Zimmerman, stated that he came out of Wegner's saloon and saw a car coming down Madison Avenue which stopped, and that he stepped on the car and at the same time plaintiff got on the car. That he, witness, went inside the car, and as he was about to take a seat on the right side he looked around and saw plaintiff standing on the left hand side of the rear platform, holding on to the rail; that the conductor was in the front part of the car writing something in a little book, but that there was no one else in the car, and that about half a minute later he heard some one jump up on the car and ring the bell, and he saw him jump off again, and that then the crash came, and witness found himself in the front part of the car where the conductor was; that the car that he was on was at a standstill when he got on

it, and after it was struck it went to about the middle of the
square; that there was plenty of room inside the car, and that
it was probably half a minute after the plaintiff got on the
car before Rosenheim got on the car and pulled the bell, and
that in the meantime plaintiff was standing on the platform
holding to the rails, but that he "didn't know whether he was
smoking or not."

Plaintiff's witness, Brenner, stated that he and Rosenheim
came out of Wegner's saloon; that Rosenheim was waiting to
go downtown, and he was going east on North Avenue; that
they saw the car coming, and Rosenheim left him on the
south side of the street, and he presumed he got on the car,
and witness had gotten "diagonally across" Madison Avenue
when he heard a shout, and looking back saw plaintiff standing
on the platform and Rosenheim pulling bell rope, and before
he could realize what happened, he saw another Madison Ave-
nue car coming and there was a crash which carried both
cars as far as the middle of the block; that the crash come
immediately after pulling of the bell and the car was either
still or had very little headway. That after the accident
the platforms of the two cars were apparently smashed, and
there was a tangle of the iron grating and the brake, "and
plaintiff was down amongst them."

The plaintiff produced other witnesses whose testimony
was to about the same effect as the evidence above stated, from
which the jury could have found that at the time of the acci-
dent the car on which plaintiff was injured was either stand-
ing still or had just started, and that plaintiff was standing
on the rear platform of the car; that there were very few
people in the car; that the plaintiff had an opportunity to go
inside the car, and that if he had done so, instead of remain-
ing on the rear platform, he would not have received the
injuries for which he now seeks to recover.

Defendant proved by its witness, Glenn, that he was con-
ductor on one of the defendant's cars and saw the accident in
which the plaintiff was injured; that he had been at work
on the street cars for fourteen or fifteen years previous to the

accident; that he took the car plaintiff was on from the place of the accident back to the barn; that that car and all other cars of the defendant had posted on them a sign forbidding people to ride on the steps or rear platform of the car, and stating that those who did so did it at their own risk; that these notices had on them, in big red letters at the top, the word "Warning."

Plaintiff's first prayer is as follows: "If the jury believed that the plaintiff was a passenger on one of the defendant's cars, and whilst being carried therein was injured by a collision between that and another of defendant's cars while moving on the same track, then the presumpiion is that the injury resulted from the negligence of the defendant, and the plaintiff is entitled to recover, unless the defendant shows that said injury did not result from its negligence or that the accident could have been avoided by the exercise of ordinary care on the part of the plaintiff."

By this instruction the jury were told that if they found the facts stated in the prayer, the plaintiff was entitled to recover unless the *defendant showed* either that the injury did not result from its negligence, or that the accident could have been avoided by the exercise of ordinary care on the part of the plaintiff. In other words, that the jury, in determining whether the injury resulted from the negligence of the defendant, or the accident could have been avoided by the exercise of ordinary care by the plaintiff, were confined to the *evidence produced by the defendant.*

As was said in the case of *Lewis* v. *B. & O. R. R. Co.,* 38 Md. 588: "The question in this and in all cases of the like kind is whether the injury complained of was caused *entirely* by the *negligence* or *improper conduct of the defendant,* or whether the plaintiff so far contributed to the same by his *own negligence* or *want of ordinary care* and *prudence,* that, but for such negligence or want of care and prudence, the injury would not have happened. In the first case, the plaintiff would be entitled to recover—in the latter he would not, unless *the defendant,* by the exercise of *care and prudence,*

might have avoided the *consequences* of the *plaintiff's negligence."*

While an injury may be sustained under such circumstances as, when shown, give rise to the presumption of negligence on the part of the defendant, the testimony adduced to show these circumstances, may also disclose such evidence as will justify the Court in saying, or the jury in finding, that the plaintiff was guilty of such contributory negligence as defeats his right of recovery.

Without meaning to say as a matter of law that the testimony produced by the plaintiff shows that he was guilty of contributory negligence, it does contain evidence from which the jury could have found that the plaintiff had the opportunity to go inside the car, and that, instead of doing so, he remained on the platform, and that under the circumstances disclosed by this evidence he was negligent, and that but for such negligence on his part he would not have been injured.

Notwithstanding the jury may have so found, yet under the instructions contained in the plaintiff's first prayer, they were required to find for the plaintiff, unless *the defendant showed* that the injury did not result from its negligence, or that it could have been avoided by the exercise of ordinary care on the part of the plaintiff.

In the case of *Phil., B. & W. R. Co.* v. *Hand,* 101 Md. 233, this Court, in condemning a prayer which told the jury that they "were not entitled to presume that the plaintiff was guilty of negligence, but that fact, if relied upon by the defendant, must be *proved by the defendant* by preponderating testimony," said: "Contributing negligence will defeat a plaintiff's action. It can, therefore, make no possible difference whether that negligence is proved by the plaintiff or by the defendant. It is its *existence,* and not the *party* by whom its existence is proved, that is material. It is the *thing* itself that defeats the action, and not the mere *accident* that it happens to be proved by the one or the other of the opposite parties. It is just as complete a bar to the action when its pres-

ence is revealed in the evidence introduced by the plaintiff, as it is when disclosed in the testimony adduced by the defendant. Inasmuch, then, as the negligence of the plaintiff directly contributing to the happening of the injury sustained, bars a recovery, it would seem *a priori* to follow, that it is absolutely of no consequence by which party to the suit that negligence is proved. Consequently it was error to instruct the jury that to be a defense such negligence *must* be proved by the *defendant.*"

Appellee's counsel cites and relies upon the case of *N. Balto. Pass. Ry. Co.* v. *Kaskell,* 78 Md. 517, where a similar prayer was approved by this Court. While plaintiff's first prayer in *Kaskell's Case* does conclude by requiring the defendant to show contributory negligence, etc., the facts of that case are entirely different. There the plaintiff was injured by reason of his having his hand around the window post of the street car. The car on which he was riding left the track and finally came in contact with a box car of the Western Maryland Railroad, mashing plaintiff's hand. Plaintiff's evidence was that the car was crowded, passengers were standing in the aisle, and the car was jolting so that the passengers with difficulty retained their seats, and that he had to take hold of the window under the circumstances to hold himself on; while the defendant's testimony was that, before and at the time of the accident, he had been sitting with his elbow resting on the window sill, with his hand "clasped around the post of the window, the back of his hand being outside the car." Therefore, according to plaintiff's evidence he was forced by reason of the defendant's negligence to take hold of the window, and he was not guilty of contributory negligence, while defendant's evidence tended to show that he was. Under such circumstances plaintiff's evidence showing that he was free from blame, it was necessary for the defendant to show that he was negligent, and the instruction as applied to the record in that case is not at all in conflict with the views we have expressed in regard to plaintiff's prayer in this case.

The defendant asked the Court, by its ninth prayer, to instruct the jury that "where there is ample room inside the car, a passenger who, for his own convenience, stands upon the platform, assumes all the risk of being upon the platform," and that if they found that the plaintiff had a reasonable opportunity to go in the car, but failed to do so, and that he was injured in consequence thereof, their verdict should be for the defendant; and by their tenth prayer, that if they found that he "got upon the car, passed the doorway and took a position upon the platform," * * * "then he assumed the risks incident to such position;" and if they further found that he was injured by reason of his being in such position, their verdict should be for the defendant; and by their eleventh prayer, that the platform of the car is a more dangerous place than the inside of the car, and if they found that the plaintiff was standing on the platform of the car after he had a reasonable opportunity to go inside, and that he was injured because of his position, their verdict should be for the defendant. In other words, these prayers asked the Court to say as a matter of law, that if the plaintiff was on the platform of the car after having had an opportunity to go inside the car, and was injured in consequence of his being there, he was guilty of contributory negligence, and cannot recover.

In the case of *Yorkt'n T. R.* v. *Cason,* 72 Md. 377, where the plaintiff was riding on the front platform of a street car, contrary to the rules of the company, which he knew, or ought to have known of, and fell from the car and was injured, the Court, after citing the case of *Balto. City Pass. Ry. Co.* v. *Wilkinson,* 30 Md. 232, as holding "that a regulation forbidding passengers to get on and off any car by the front platform was reasonable, and that knowingly to violate it was conclusive evidence of negligence on the part of the passengers," said: "Had he been inside the car, where he ought to have been, the injury would not have been sustained. His own voluntary choice placed him in an exposed position, and that position rendered the injury possible. It was a posi-

tion not provided for him to occupy, and even a careless observer must know that it was the most dangerous one to take. He thought proper to make an experiment under circumstances of peril open and known to him, which he could have reasonably avoided, and it is no injustice that he is required to bear the consequences of his own act."

In the case of *State, use of Miller,* v. *Western Md. R. Co.,* 105 Md. 33, where the party killed was voluntarily riding on the platform of a railroad car at the time of the accident, the Court held the rule to be well settled, "that if a person voluntarily takes an exposed position upon a train, he himself incurs the special risk of that position. In this case the risk was so obviously dangerous that a prudent man would not think of incurring it."  \*  \*  \*  "In the case at bar, if the deceased had gone into the passenger or baggage car, and not remained on the bumper or platform, he would not have been killed. He voluntarily selected a place of danger and remained there until he was killed."

In both of these cases the Court held that the conduct of the party injured, as to which the proof was clear, and as to the nature of which there was no room for ordinary minds to differ, amounted in law to contributory negligence. And there are numerous cases elsewhere which hold that a party who rides on the platform of a train or a rapidly moving street car, in the absence of some good excuse for so doing, is guilty of negligence, and among them is the case of *Thane* v. *Scranton Traction Co.,* 191 Pa. St. 249; 43 *Atl. Rep.* 136, referred to by the appellant, where the Supreme Court of Pennsylvania recognized that the previous decisions of that Court had established the rule that standing on the platform of a moving railroad train was negligence *per se,* but that standing on the platform of an ordinary horse car was not negligence *per se,* but raised a question for the jury, and held that: "The increased speed upon electric passenger railway lines, with its resultant danger, now approximates to that of steam railroads," and that where a passenger, without

any special reason for doing so, remains on the platform of a moving trolley car, he is guilty of negligence *per se.*

The general rule as stated by *Hutchinson on Carriers,* Vol. 3, Sec. 1174 (3rd Ed.), is that: "Where the question whether the negligence of the passenger did, in fact, proximately and naturally contribute to the injury, depends for its determination upon conflicting testimony, it must be submitted to the jury as a question of fact. And although the facts have been ascertained, if they are such that fair-minded men might honestly come to different conclusions as to the injury sustained by the passenger having been contributed to by his own carelessness or imprudence, the question of his contributory negligence must be determined as one of fact by the jury." And from the decisions of this Court it may be said that, "Unless there is some prominent and decisive act, in regard to which there is no room for ordinary minds to differ," and unless the conduct of the plaintiff relied on as amounting in law to contributory negligence, is established by clear and uncontradicted evidence, the case should not be withdrawn from the jury; and that, "when the nature of the act relied on to show contributory negligence can only be determined by all the circumstances attending the transaction, it is within the province of the jury to characterize it." *McMahon Case,* 39 Md. 449; *Lake Roland Co.* v. *McKewen,* 80 Md. 593; *Cook* v. *St. Ry. Co.,* 80 Md. 538; *Baker* v. *Md. Coal Co.,* 84 Md. 19; *Winkelman & Brown Co.* v. *Colloday,* 88 Md. 91; *Strauss* v. *United Rys. Co.,* 101 Md. 497. In this case there is not only a conflict of evidence as to the conduct of the plaintiff relied on as constituting contributory negligence, but the nature of the act, so relied on, can only be determined by considering all the circumstances attending the accident, and it was for the jury to say under all the circumstances whether the plaintiff in being on the platform, after he had had an opportunity to go inside the car, was guilty of contributory negligence. According to the evidence, the car was either standing still, or if it had started, it had not "moved perceptibly;" the plaintiff was either in

the act of entering the car when the accident happened, or had stopped on the platform momentarily, or for the short time mentioned in the evidence, with a view of going inside as soon as the car started, or with the intention of remaining there. Under such circumstances, the Court would not be warranted in saying as a matter of law that he was guilty of contributory negligence, or that in being on the platform, after having had an opportunity to go inside the car, he assumed the risks of the collision which occurred, and these prayers were, therefore, properly refused. In the case of *Strauss* v. *United Ry. Co., supra,* this Court said: "If the manner in which he (plaintiff) stood be not fixed by clear and uncontradicted evidence, the Court cannot say, as a matter of law, that the appellant was guilty of contributory negligence. Again, what danger then existed, against which, by the exercise of ordinary care he ought to have guarded himself. He should not be required to predicate danger, unless there was something in the situation known to him, or which he could have known by the exercise of reasonable care, from which he was, or ought to have been warned of his peril. Here it seems, he stood up at the time the speed of the car was about to be increased. He should have known that when that happened certain irregularities of motion would be experienced. It cannot be doubted that he was reasonably prudent in taking an upright position as against the usual expected increase of speed. But the only evidence is that the lurch of the car was 'sudden, unexpected and unusual.' "

The doctrine of assumed risks or waiver of right of action, which has most frequent application to the relation of master and servant, while theoretically distinct, in its practical application to ordinary negligence cases between passengers and carriers, not affected by any contractual relation other than the implied contractual obligations between them, necessarily, it would seem, involves the doctrine of contributory negligence. For unless the position voluntarily taken by a passenger exposes him to dangers that are obvious and patent, or such as he knew of, or by the exercise of ordinary care ought

to have anticipated, he cannot in justice, in case of resultant injury, be held guilty of contributory negligence, or to have assumed the risk of an injury he had no reason to anticipate, or to have waived his right of action therefor.   On the other hand, if the danger to which he voluntarily exposed himself, was obvious and patent, or such as he knew of, or by the exercise of ordinary care ought to have anticipated and injury follows in consequence thereof, then he was guilty of contributory negligence, and must be held to have assumed the risk of his position.   And that is what the learned Judge meant in *Strauss's Case,* which is in entire accord with the views expressed in *Cason's Case* and in *Miller's Case.*

By the defendant's sixth prayer the Court was asked to instruct the jury, that if the plaintiff took an exposed and dangerous position on the car, and he was injured by reason of his taking such position, he could not recover.   This prayer entirely ignores plaintiff's own testimony that he got on the platform and took such position as he was about to enter the car, and before he could get inside the accident happened, and was therefore properly refused.

We find no errors in the rulings of the Court on the other prayers, or defendant's special exceptions to plaintiff's prayers, the exceptions to which were not pressed in this Court. The evidence excepted to in the first and second exceptions, was the testimony of the plaintiff that before the accident he had an arrangement to go into business, had intended to go into business.   This evidence was doubtless offered for the purpose of enhancing the damages, by showing that before the accident he had good business prospects, which he lost in consequence thereof, and was clearly inadmissible.   In the recent case of *Winslow Elevator and Mach. Co.* v. *Hoffman,* 107 Md. 621, JUDGE BURKE, in quoting from 13 *Cyc.,* 59, states the rule to be that "when a new business or enterprise is floated, and damages by way of profit are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an

established business, and its profits are speculative and remote, existing only in anticipation."

The evidence that the plaintiff had married after the accident, excepted to in the third exception, is evidence of the same character as the evidence held to be inadmissible in *Stockton* v. *Frey,* 4 Gill, page 420, and *Pensylvania Co.* v. *Roy,* 102 U. S. 451, and there was error in permitting it to be given, but we must not be understood as saying that it was such an error as would justify this Court in reversing the judgment on that ground alone, the jury having been properly instructed as to the measure of damages. *B. & O. R. R. Co.* v. *Shipley,* 31 Md. 368; *B. & O. R. R. Co.* v. *Hauer,* 60 Md. 459. For the errors in the ruling of the Court in the first, second and third bills of exception, and in granting plaintiff's first prayer, the judgment must be reversed, and the case be remanded for a new trial.

*Judgment reversed with costs, and case remanded for a new trial.*