## RICHARDSON *v.* RICE, ET VIR

[No. 96, September Term, 1969.]

*Decided December 5, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY, and SMITH, JJ.

*Delverne A. Dressel,* with whom were *Emanuel H. Horn* and *Dickerson, Nice, Sokol & Horn* on the brief, for appellant.

*James D. Peacock,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

On September 14, 1966, at approximately 7:25 P.M., Christine Rice, appellee and one of the plaintiffs below (hereinafter referred to as "the plaintiff"; the plaintiff's husband was also a plaintiff below), was struck by an automobile driven by Joseph Leonard Richardson, appellant and defendant below, while she was attempting to cross Liberty Heights Avenue in Baltimore City. At the time of the accident the weather conditions were described as raining and dark, although the defendant Richardson said he believed the lighting was "good enough." It is undisputed that the area in which the accident happened was a business district, that the plaintiff was attired in a dark coat, that she was struck approximately 70 feet west of the intersection of Liberty Heights and Ayrdale Avenues, and that she was not within a pedestrian crosswalk at the time. The parties also agree that a dent in the left front hood, approximately 14 inches to the right of the left front fender, of the defendant's car was where the vehicle initially came into contact with the plaintiff.

The plaintiff's view of the facts in regard to how the accident took place is that on the evening of the occurrence the plaintiff left her employer and was going home. On her way, she intended to shop at the Food-A-Rama store on the south side of Liberty Heights Avenue, just a couple of blocks from her place of employment. Walking to the store necessitated that she cross Liberty Heights Avenue from the north side and the plaintiff chose to do so at a point directly across from the store, some 70 feet west of the nearest intersection at Ayrdale Avenue. The plaintiff's answer to Interrogatory No. 12, asked of the plaintiff by the defendant, was read into evidence before the jury. Her answer stated:

"Before she stepped off the curb she looked for traffic coming from the left, or westbound traffic, and saw no traffic except that which was stopped at a red traffic signal at the intersection of Calloway Avenue and Liberty Heights, which is the intersection one block east of the intersection of Arydale and Liberty Heights. She then walked across the two westbound lanes and stopped directly on the two yellow lines dividing the east and westbound lanes in the center of the street. She stopped because she saw an automobile and two mail trucks coming east on Liberty Heights, and waited on the center lines for these vehicles to pass. It was about at the time the last truck had passed in front of her, going east, when she was struck by the westbound automobile driven by the defendant. The plaintiff was stopped for approximately fifteen, thirty seconds on the center line before she was struck, and she did not look for traffic approaching from her left rear after she reached the center lines, because she felt she was safe insofar as traffic going west was concerned, due to the fact she had completely crossed the two westbound lanes and she assumed any traffic

coming from that direction would pass behind her."

Thus, it is the plaintiff's contention that the defendant negligently crossed the double center line and hit her.

The defendant's version of the facts is that he was driving his wife and other passengers in his car to visit a friend who lived some distance west of the place of the accident. Proceeding westbound on Liberty Heights Avenue, the defendant was in the lane nearest the center lines as he intended to turn into a gasoline station located on the south side of Liberty Heights Avenue, just west of the Garrison Avenue intersection. The defendant testified he was traveling 20 miles an hour in a 25 miles per hour zone and had both his headlights and windshield wipers on. Immediately preceding him in his lane were several vehicles and in the lane to his right there were vehicles as well. Approaching the point of the accident, the defendant's automobile is alleged to have been approximately two feet to the right of the center lines. Then immediately after the rear of a truck in the eastbound fast lane passed the front of his vehicle, the accident occurred. The defendant testified that he never saw the plaintiff until after the impact. However, his wife said she saw the plaintiff a moment before the accident. The wife testified that the plaintiff was moving "from my left to my right," although she could not be sure whether the plaintiff was stepping backward or forward. The defendant supports his contention that the plaintiff either stepped backward or forward into his lane by the fact that the remains of paper bags and glass jars, being carried by the plaintiff, were found scattered over the two westbound lanes of the street by the investigating police officer.

The investigating officer testified that there were lights in the vicinity of the accident at the commercial establishments located both on the north and south sides of Liberty Heights Avenue.

A diagram of the investigating officer, introduced in-

to evidence, indicated that Liberty Heights Avenue measured 54 feet from the north curb to the south curb, with two lanes for westbound vehicular traffic measuring 11 feet and 17 feet respectively. The lanes provided for eastbound traffic were also two in number, and measured 12 feet and 14 feet. The officer testified that Calloway Avenue, which is the first intersecting street to the east of Ayrdale Avenue, was approximately 400 to 500 feet distant and the distance between Ayrdale Avenue and Garrison Avenue was approximately 250 to 300 feet.

The investigating officer also testified in regard to the point of impact. He stated that it was 70 feet west of Ayrdale Avenue as determined by him from the location of the glass in the street and having it pointed out to him by the defendant. He observed that the glass was scattered in a northerly direction over the two westbound lanes and this is shown on his diagram, which shows the point of impact as being approximately two feet north from the center lines. The officer also determined that the impact to the defendant's automobile was in the left front hood as shown by a dent. Photographs of the defendant's car (Defendant's exhibits Nos. 4 and 5) show the location of this dent, which, as we have indicated, is approximately 14 inches to the right of the left front fender of the defendant's automobile.

The investigating officer further testified that upon his arrival at the scene of the accident, he determined that the automobile of the defendant had not been moved from the point where it had stopped and he observed that the left side of the car was to the right of the center line. He further stated there was nothing to indicate that the defendant's automobile had been over the center line or was straddling the dividing line. When he interviewed the plaintiff in the hospital following the accident, the plaintiff never told the investigating officer that she was standing on the yellow lines when she was struck by the defendant's automobile.

The defendant at the close of the plaintiff's case and

at the end of the entire case moved for a directed verdict in his favor on two grounds: (1) that there was no evidence that the defendant was guilty of primary negligence and (2) the plaintiff was guilty of contributory negligence as a matter of law. These motions were denied by the trial court. The case was submitted to the jury on instructions by the trial court to which the defendant took several exceptions. We will consider the instructions and the exceptions more fully later in this opinion. The jury found a verdict for the plaintiff for $7,000 and for Hiram J. Rice, the plaintiff's husband, for $3,000. The trial court denied the defendant's motion for a judgment n.o.v. or in the alternative for a new trial and upon the judgments absolute upon the verdicts for the amounts indicated, the defendant took a timely appeal to this Court.

## (1)

The trial court, in our opinion, correctly denied the motions of the defendant to direct the verdict in his favor and for a judgment n.o.v. predicated upon the ground that there was allegedly no evidence of primary negligence. Although there was certainly evidence to the contrary, the plaintiff testified that she had crossed the two westbound lanes of Liberty Heights Avenue and proceeded "to," or was standing "on" the center lines dividing the westbound from the eastbound traffic. If the jury accepted this testimony, as apparently it did, together with the evidence of the location of the indentation on the left side of the front of the defendant's automobile made by its contact with the plaintiff's body on her left side, the jury could conclude that the defendant was operating his automobile to the *left* of the double lines and in the wrong lane of traffic, thereby proximately causing the injury to the plaintiff. Our decision in *Thursby v. O'Rourke*, 180 Md. 223, 23 A. 2d 656 (1942) is controlling on this issue.

In *Thursby*, as in the present case, there was a conflict in the testimony in regard to how the accident oc-

curred, the plaintiff in that case testifying that he had crossed York Road in Baltimore City between intersections and had "stopped between the southbound and northbound [street car] rails," when the defendant's car struck him. Judge Forsythe, for the Court, stated:

> "Even between crossings, failure to drive on the right-hand side of a street in Baltimore, as required by a city ordinance, is strong evidence of negligence on the part of the motorist, and a motorist driving on the wrong side of the street must be unusually carefully [sic] and loses his right-of-way over pedestrians. *East Baltimore Transfer Co. v. Goeb*, 140 Md. 534, 118 A. 74; *Greenbaum v. Costa*, 137 Md. 524, 113 A. 79."
> (180 Md. at 229; 23 A. 2d at 659)

The Court in *Thursby* further stated:

> "The evidence on the part of the appellee, and the appellant, is in conflict as to exactly how the accident occurred, and it was for the jury to determine which was the correct version. The court may not reject one, and accept the other, that must be left to the jury. 'The well-established rule of law, by which we are able to be governed in deciding the question presented by the first of these prayers is that a "prayer seeking to take the case from the jury on the alleged ground of a total failure of evidence to support the plaintiff's case, will not be granted, if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source, but the weight and value of such evidence will be left to the jury." ' *Fisher v. Finan*, 163 Md. 418, 420, 163 A. 828."
> (180 Md. at 228; 23 A. 2d at 658-659)

See also *Geschwendt v. Yoe*, 174 Md. 374, 198 A. 720 (1938).

Our decision in *MacKenzie v. Reesey,* 235 Md. 381, 201 A. 2d 848 (1964), relied on by the defendant, is distinguishable from the present case in that in *MacKenzie* the undisputed evidence indicated that the accident occurred when the pedestrian weaved into the path of the vehicle of the defendant while that vehicle was entirely in its proper lane of traffic and to the right of the center of the road where the accident occurred. As we have indicated, there was conflicting evidence in the present case in regard to how the accident occurred and the jury must resolve this conflict.

(2)

In our opinion, the trial court also properly denied the defendant's motion for a directed verdict and his motion for a judgment n.o.v. predicated upon the ground that the plaintiff was guilty of contributory negligence *as a matter of law.* In considering this issue in the posture of the present case, the testimony and all legitimate inferences from that testimony must be considered in a light most favorable to the plaintiff.

The defendant correctly observes that we have held that when a pedestrian crosses a street between intersections, he is bound to accommodate himself to the vehicles using the street. *Picchio, Adm. v. Scruggs,* 247 Md. 574, 577, 234 A. 2d 133, 135 (1967) ; *Van v. McPartland,* 242 Md. 543, 548, 219 A. 2d 815, 817 (1966), and prior Maryland cases cited therein. However, if the jury were to accept the plaintiff's testimony (as apparently it did) in regard to how the accident occurred, the jury could find that the plaintiff *had* accommodated herself to the vehicles using Liberty Heights Avenue and was not contributorily negligent. In this factual setting, the trial court properly declined to rule that the plaintiff was contributorily negligent as a matter of law and left the issue to the determination of the jury. As we stated in *Thursby, supra*:

> "The contributory negligence, prayer B seems to have been offered on the theory that a pedes-

trian crossing a street between intersections at once is guilty, as a matter of law, of such contributory negligence which will prevent recovery. This is definitely not the law. A pedestrian crossing a street between crossings is not disobeying the law. As was said in *Ebert Ice Cream Co. v. Eaton*, 171 Md. 30, 35, 187 A. 865, 867, 'the mere fact, however, that a pedestrian crosses a street between intersections (*Legum v. State*, 167 Md. 339, 173 A. 565; *Lusk v. Lambert*, 163 Md. 335, 163 A. 188; *Nelson v. Seiler*, 154 Md. 63, 139 A. 564), or that a motorist crosses the center line of a street (*R. & L. Transfer Co. v. State*, 160 Md. 222, 153 A. 87), is not necessarily negligent; it is what either does or both do under such circumstances that determines the question of negligence.'

"The testimony of the appellee, and that of the appellant, and his witnesses, as to how the accident occurred; where the appellee was standing; whether he was walking, trotting or running, and whether the car pulled out from behind another car and hit the appellee, is in direct conflict. Therefore, it was for the jury to determine, from all of the testimony, the true facts, because it is upon the facts as found by the jury that it must be determined whether the appellee was guilty of any acts of negligence contributing to his injury. Contributory negligence always depends upon the facts of a particular situation."

(180 Md. at 228-229; 23 A. 2d at 659)

The *MacKenzie* case, *supra*, again relied on by the defendant on this issue, is also distinguishable because of the conflict of the evidence in the present case in regard to how the accident occurred. In *MacKenzie* there was no such conflict. The other cases relied on by the defendant may be similarly distinguished.

## (3)

The defendant contends that the trial court committed prejudicial error in its instructions to the jury in three particulars: (a) in failing to instruct fully, as requested by the defendant that the plaintiff, as a pedestrian crossing the street between intersections, was under an obligation to use the greatest care for her own protection and was under a further duty to accommodate herself to automobiles lawfully using the roadway; (b) in failing to instruct fully and clearly, as requested by the defendant, in regard to the plaintiff's duty to observe the movement of vehicles; and, (c) in instructing the jury, contrary to the request of the defendant, that, "there is no evidence in this case sufficient to support a finding that the accident occurred as the result of the Plaintiff stepping backward into the path of the Defendant's vehicle. * * *"

## (a) and (b)

Although the trial court's charge in regard to the plaintiff's duty to use the greatest care for her own protection, to accommodate herself to automobiles lawfully using Liberty Heights Avenue and to observe the movement of vehicles on that roadway was, perhaps, not as full and complete as may have been desirable, we are of the opinion that taking the charge as a whole—as we have held we should do, see *Pettaway v. Washington,* 255 Md. 202, 257 A. 2d 214 (1969)—these matters were sufficiently covered in the charge and no reversible error occurred.

## (c)

In regard to the third error in the charge, urged by the defendant, however, we have concluded that the trial court was in error and that the error was prejudicial to the defendant necessitating a reversal of the judgment and a remand of the case for a new trial. In considering this error we should set forth the relevant portions of the charge and the exception of the defendant to it. The trial court instructed the jury on this point as follows:

"* * * In this case, if you believe that the Plaintiff was standing in the center of Liberty Heights Avenue waiting for eastbound traffic to pass so she could cross to the south side of the street, and if you do not believe the testimony of the Defendant and his witnesses, that the Plaintiff stepped into the path of the Defendant's vehicle, then you may return a verdict in favor of the Plaintiffs, provided that you further find that the Plaintiff's action of crossing the street to the point where she was struck and in the manner that she did, was not contributory negligence, which was the proximate cause of the accident.

"You are instructed that there is no evidence in this case sufficient to support a finding that the accident occurred as the result of the Plaintiff stepping backward into the path of the Defendant's vehicle. * * *"

To this portion of the charge, the defendant excepted as follows:

"The defendant also excepts to the Court's charge and that portion thereof wherein the Court granted the plaintiffs' instruction number 5-A, that there is no evidence in this case sufficient to support a finding that the accident occurred as a result of the plaintiff stepping backward into the path of the defendant's vehicle, and the defendant submits that the evidence as offered in this case could clearly enable the jury to make a determination that, in fact, the plaintiff did step back into the path of the defendant's vehicle. And the defendant further argues on this point that this is purely and solely a matter for the jury to determine under the evidence that has been offered in this case, and would not be a matter of conjecture or speculation for the jury."

The defendant's wife, who was seated in the right front seat of the defendant's automobile, testified that his vehicle was approximately two feet to the right of the center line. She drives an automobile herself and estimated the defendant's speed at less than 20 miles an hour. The wife then testified:

> "As we approached this point [at the point of impact], I saw an automobile, which was a panel type thing which had no light coming through it. At approximately the point, the same point I saw an object that came, appeared in the same motion as the truck, and about that same time that object came, appeared in front of the car, when my husband stopped the car.
>
> "Q. That object turned out to be what? A. A woman, Mrs. Rice.
>
> "Q. Did you see the direction in which that object moved? A. I couldn't be sure whether it was moving forward, stepping backward. It just seemed to be there.
>
> "Q. You say moving forward or stepping backward, is that from your left to the right, or your right to your left? A. My eye by moving forward or stepping backward, I make the comparison in terms of the direction in which an individual would be facing. I don't know what direction she was facing.
>
> "Q. But her movement? A. The movement was from my left to my right."

When this testimony is taken together with (1) the plaintiff's testimony that she had left the north curb of Liberty Heights Avenue to cross to the south curb, and thereby would be facing south as she walked across the westbound lane to reach the double line to which she testified she came and on which she stood without then looking to her left; (2) the dent in the left front side of the defendant's car; (3) the plaintiff's testimony that she

was injured on her *left side* (there being no evidence that when the plaintiff reached the double line she turned around, and there appearing to be no reason why she should do this) ; (4) the glass and some food stuffs being found in the northerly portion of the westbound lane; (5) the investigating officer's testimony in regard to the point of impact; and (6) the testimony that the automobiles were moving in the northerly portion of the eastbound lane, in our opinion, the jury *could draw a reasonable inference* that the plaintiff continued to face south after she reached the double line and, to be safe from the traffic moving east in the northerly portion of the eastbound lane, stepped back into the way of the defendant's automobile which was proceeding two feet to the right of the center line. This evidence and the reasonable inferences therefrom are more than mere conjecture or speculation. This theory of the defendant in explaining how the accident occurred when his car was allegedly two feet to the right of the center lines should have been left to the jury rather than have been the subject of an instruction (amounting to a directed verdict on the issue) that there was *no evidence* sufficient to support a finding that the accident occurred as a result of the plaintiff stepping backward into the path of the defendant's automobile. See *Jacobson v. Julian,* 246 Md. 549, 555-556, 229 A. 2d 108, 113 (1967).

> *Judgment reversed, and the case remanded for a new trial; the appellees to pay the costs.*