FRANKIE LAMAR, Administratrix of the Estate
of John Cornell *v.* JEFFREY H. REMMEL

[No. 257, September Term, 1970.]

*Decided January 28, 1971.*

The cause was argued before ORTH, THOMPSON, and MOYLAN, JJ.

*John T. Encoh,* with whom was *William Mitchell* on the brief, for appellant.

*John B. Howard* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Judge W. Albert Menchine, sitting with a jury in the Circuit Court for Baltimore County, granted a directed verdict in favor of the defendant-appellee at the close of the plaintiff's case in a suit by Frankie Lamar, Administratrix of the Estate of John Cornell against Jeffrey H. Remmel for damages resulting from an automobile accident. The trial judge granted the motion on the basis that the evidence failed to show negligence of the defendant and also on the basis that it affirmatively showed contributory negligence on the part of John Cornell, the deceased. The testimony was as follows:

On September 16, 1968, a sunny, clear day, at approximately 12:36 P.M., the plaintiff's decedent, then 87 years of age, was struck by defendant's car, while the deceased was attempting to cross a public highway at the intersection of Gwynn Oak Avenue and Gwynndale Avenue, in Woodlawn, Baltimore County, Maryland.

Gwynndale Avenue runs in an east and west direction and is a two-way street forty feet in width. The east and westbound lanes are divided by one solid white line in the center of the street forming equal twenty foot traffic lanes. There is a stop sign at the intersection of Gwynndale Avenue and Gwynn Oak Avenue, controlling eastbound traffic entering Gwynn Oak Avenue.

Gwynn Oak Avenue is a black top road running north and south. The northbound and southbound traffic lanes are equal in width and are divided by a grass median strip. The southbound lanes are unmarked and total thirty-three feet in width. Just north of the intersection,

the southbound lanes of Gwynn Oak Avenue are widened by a left turn lane which reduces the width of the grass median strip. Gwynn Oak Avenue downgrades immediately north of Gwynndale Avenue, but levels off at that intersection. About 50 or 60 feet north of the intersection, Gwynn Oak Avenue curves sharply to the west. The posted speed limit on Gwynn Oak Avenue is 30 M.P.H. The crosswalk is not marked in the bed of the street at this intersection. There are sidewalks along Gwynndale Avenue and along Gwynn Oak Avenue. There is a bus stop on Gwynn Oak Avenue, at the southeast corner of the intersection.

Immediately before the accident, the defendant, Jeffrey H. Remmel, age 23, drove his 1967 Plymouth from the back parking lot of Harley's Restaurant, located on the southwest corner of the aforementioned intersection, onto Gwynndale Avenue and immediately proceeded east to the stop sign at Gwynn Oak Avenue. As he pulled from the parking lot, he noticed the plaintiff's decedent walking in an easterly direction on the north sidewalk of Gwynndale Avenue opposite the driveway. The defendant stopped at the stop sign (next to the white center line) and because of heavy traffic remained there at least 30 seconds before driving into the intersection. It was the defendant's intention, after arriving at the stop sign, to proceed north on Gwynn Oak Avenue, which would require crossing the two southbound lanes and a left turn at the median crossover. He first looked to his right to observe northbound traffic on Gwynn Oak Avenue and then looked to his left to observe southbound traffic on Gwynn Oak Avenue. After looking to his left, he moved into the intersection and continued looking to his left until he struck the plaintiff's decedent. The deceased was crossing the street apparently from northwest to southeast to catch a bus. Remmel did not see the pedestrian in the intersection prior to hitting him because he was looking to his left. Three to five seconds elapsed between the time he looked to his left until the time he struck the deceased.

The sharp curve of Gwynn Oak Avenue, north of the intersection, limits visibility in that direction to about fifty or sixty feet. The defendant's vision of southbound traffic was also slightly obstructed by a telephone pole on the northwest corner of the intersection. Southbound and northbound cars passed in front of the defendant, as he was sitting at the stop sign. The reason he continued to look to the left as he pulled into the intersection was to watch out for other southbound traffic coming around the corner. There is nothing to prevent the defendant from seeing a pedestrian in the middle of the intersection.

The plaintiff's decedent was struck in his right hip by the right front of the defendant's vehicle. The point of impact was in the intersection, but not in the crosswalk of either street.

After the accident, the plaintiff's decedent was taken to Baltimore County General Hospital where he died on September 24, 1968, as a result of the accident.

The trial judge found, and we agree, these facts were not sufficient to show negligence by the defendant-appellee.

The physical characteristics of and the heavy traffic at the intersection of Gwynn Oak and Gwynndale Avenues required caution on the part of the appellee. In order to proceed into the northbound lanes of Gwynn Oak Avenue, the defendant was required to ascertain, first, that the two northbound lanes south of the median crossover were clear, and, secondly, simultaneously determine that there would be no traffic approaching in the two southbound lanes. This latter determination required continued attention due to the downgrade, thirty mile speed limit and limited sight distance of not more than sixty feet. Under these circumstances, we cannot say the appellee was negligent in looking constantly to the left while making his turn, especially since he had the right to assume no pedestrian would violate his right-of-way. See Md. Code, Art. 66½, § 236 (now covered by §§ 11-502 and 11-503) which, except at crosswalks, gives the mo-

torist the right-of-way over pedestrians. *Thompson v. Sun Cab Co.*, 170 Md. 299, 304, 184 A. 576. It is agreed here that the plaintiff's decedent was struck outside of any crosswalk. There was no testimony to justify a finding that the defendant's vehicle was moving at too great a speed, was incompetently or carelessly driven, was not under proper control, or that defendant failed to give the appropriate signal for a left turn.

Appellant contends that under *Gresham v. Commissioner of Motor Vehicles*, 256 Md. 500, 260 A. 2d 649 and in a number of earlier cases, the Court of Appeals has held that it is the duty of a motorist to be alert for the presence of pedestrians. In those cases there was evidence of negligence in addition to the mere failure to see the pedestrian's violation of the motorist's right-of-way. It must be noted in the instant case traffic conditions were such as to necessarily engage the full attention of the motorist.

To support the argument there was negligence on the part of the appellee, appellant cites *Thompson v. Sun Cab Co., supra, Richardson v. Rice,* 256 Md. 19, 259 A. 2d 251; *Ebert Ice Cream Co. v. Eaton,* 171 Md. 30, 187 A. 865; *Sun Cab Co. v. Cusick,* 209 Md. 354, 121 A. 2d 188, all indicating a motorist's driving on the wrong side of the highway may be sufficient to show negligence. None of those cases are in point, however, because in them the driver was not engaged, as here, in making a lawful left turn. Md. Code, Art. 66½, § 232 (now § 11-402 A).

The appellant's final argument was answered by the Court of Appeals in *Radcliffe v. Texas Supply Co.,* 194 Md. 117, 121, 69 A. 2d 813 and *Jones v. Federal Paper Board Company,* 252 Md. 475, 492, 250 A. 2d 653 which held it proper to make a left turn without going around the center point of the intersection under Md. Code, Art. 66½, § 225B (now covered by § 11-601 (a) (2)).

Since we have found that the plaintiff-appellant failed to show negligence by the defendant-appellee, we need

not consider the question of whether or not the record showed the plaintiff's decedent was guilty of contributory negligence.

*Judgment affirmed.*
*Appellant to pay costs.*