ARTHUR WRIGHT ET AL. *v.* DAVID CLARK HIXON

[No. 1007, September Term, 1978.]

*Decided May 10, 1979.*

The cause was argued before LOWE, LISS and WILNER, JJ.

*Richard J. Hopkins,* with whom was *Othello G. Jones, Jr.,* on the brief, for appellants.

*Michael P. Chervenak,* with whom were *Ford & O'Neill* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

This appeal arises out of a motor vehicle accident which occurred on October 20, 1976 in Prince George's County, Maryland. The appellants, Arthur Wright and David Mayer, sued the appellees, Clark Axford Hixon and David Clark Hixon, in the Circuit Court for Prince George's County, alleging injuries and damages arising out of the accident. The case was commenced before a jury. Clark Axford Hixon was dismissed as a defendant prior to trial, and no appeal was taken from the trial court's action as to this defendant. The case proceeded against David Clark Hixon only. At the close of the plaintiff's case, the defendant moved for a directed verdict. That motion was denied. At the close of all the evidence the defendant renewed his motion for a directed verdict which was granted by the trial court. Appellants-plaintiffs appeal from the trial court's action in granting the appellee's-defendant's motion for a directed verdict.

Appellants raise four issues:

1. Whether the trial court erred in directing a verdict for Hixon and ruling that he was not negligent solely because he faced an amber light before he approached the intersection.

2. Whether appellant Mayer could present his medical bill as corroborative evidence of the fact that treatment was received to alleviate his pain and suffering.

3. Whether court erroneously precluded appellant Wright from testifying as to how he calculated his lost income.

4. Whether the jury should resolve questions of negligence and proximate cause, once plaintiff had established the elements of *res ipsa loquitur.*

At oral argument, appellants abandoned issue 4. Therefore, it will not be necessary for us to consider that issue in this opinion. In passing, we note that there was no merit to the argument made by the appellants on that issue in their brief.

The accident, which is the subject matter of this suit, occurred at the intersection of Baltimore Boulevard (U.S. Route 1) and Powder Mill Road in Beltsville, Prince George's County, Maryland. Arthur Wright, appellant, was operating an Austin-Healy automobile in a southerly direction on Baltimore Boulevard, and appellee David C. Hixon was operating a Chevrolet Vega traveling west on Powder Mill Road. David A. Mayer was a passenger in the Wright vehicle. Baltimore Boulevard, a north-south thoroughfare, consists of four lanes, two in each direction. Powder Mill Road runs in an east-west direction with one lane in each direction. The intersection was controlled by an electronic traffic signal located in the center of the intersection. At the time of the mishap, a light rain was falling, and the roadway was wet.

Appellant Wright testified his automobile was first in line facing south in the curb lane of Route 1 where he had stopped in response to a red signal light. A blue Nova automobile was first in line in the left-hand lane next to him. After the light changed to green, the Nova moved forward as did the appellant's car. Wright testified that approximately four seconds elapsed between the time the light changed to green and the instant his vehicle started forward. The Nova which, because of its height, blocked the appellants' view of the intersection, stopped suddenly, and the appellants' automobile collided with the automobile of the appellee.

The appellee, Hixon, testified that as he was approaching the intersection, the light facing his vehicle turned yellow, and he proceeded through the intersection. He stated his speed was approximately twenty-five miles per hour, and that the light was green and then amber as he entered the

intersection. The appellee related that he had no further knowledge of the color of the light after he entered the intersection. George Taylor, a passenger in Hixon's automobile, had a somewhat different recollection of the events leading up to the accident. He testified that he was seated in the right front passenger's seat of Mr. Hixon's automobile. He stated that as Hixon's car approached the "stop line" and crossed it, the light turned yellow. He identified the "stop line" as the place "where you are supposed to stop if the light is red." In response to cross-examination, the witness stated that the "stop line" was "approximately twenty yards before you actually entered the intersection." Again in response to a question on cross-examination, the witness stated that the Hixon vehicle was about fifteen yards from the intersection when the light turned yellow. The witness gave no testimony as to what happened after he first saw the light turn yellow.

At the conclusion of all testimony in the case, the trial court granted the appellee's motion for a directed verdict and withdrew the case from the consideration of the jury. We conclude the trial court erred and shall reverse.

The trial judge gave as the basis for his granting of the appellee's motion for a directed verdict the failure of the appellants to offer sufficient evidence of primary negligence that would justify submitting the issue to the jury, and further, that even if there had been sufficient evidence of primary negligence, that the appellant was guilty of such contributory negligence as a matter of law as to preclude the submission of the case to the jury. The rule is clear that when considering the propriety of the granting of a motion for a directed verdict by the trial court, the reviewing court must resolve all conflicts in the evidence in favor of the non-moving party and must assume the truth of all evidence and such inferences which naturally flow therefrom which tend to support the non-movant's right to recover. *Fleming v. Prince George's County,* 277 Md. 655, 658, 358 A. 2d 892 (1976); *Beck v. Baltimore Transit Co.,* 190 Md. 506, 509, 58 A. 2d 909 (1948).

The relevant statutory provisions governing the rights and duties of a motorist entering an intersection upon a traffic

signal displaying a green or steady amber indication are found in Maryland Code (1977), Transportation Article, Section 21-202, which reads as follows:

(b) *Green indication.* — (1) Vehicular traffic facing a circular green signal may proceed straight through or, unless a sign at the place prohibits the turn, turn right or left. However, this vehicular traffic, including any vehicle turning right or left, shall yield the right-of-way to any other vehicle and any pedestrian *lawfully within the intersection* or an adjacent crosswalk when the signal is shown.

\* \* \* \* \* \*

(c) *Steady yellow indication.* — (1) Vehicular traffic facing a steady yellow signal is warned that the related green movement is ending or that a red signal, which will prohibit vehicular traffic from entering the intersection, will be shown immediately after the yellow signal. (Emphasis added.)

These provisions, which were adopted essentially intact from former Code (1957, 1970 Repl. Vol.) Art. 66½, Section 11-202, were construed by the Court of Appeals in *Haraszti v. Klarman,* 277 Md. 234, 352 A. 2d 833 (1976). In that case, the Court considered the changes between Art. 66½, Section 11-202 (a) (2) (i) and its predecessor provision, Code (1957, 1967 Repl. Vol.) Art. 66½, Section 193 (b) (1). The Court concluded that a motorist facing a steady amber indication was no longer under a primary duty to stop before entering an intersection, but could lawfully enter and proceed through the intersection, even though during the interval of passage, the signal changed from yellow to red. The Court stated that:

[A] motorist, proceeding on a green signal is not obligated to anticipate that another driver facing a red signal will ignore it and unlawfully intrude into the intersection, *Baltimore Transit Co. v. Putnam,* 250 Md. 19, 23, 241 A. 2d 586, 588 (1968); *Schwiegerath v. Berger,* 237 Md. 68, 70, 205 A. 2d

290, 291 (1964); nor is he under any duty to anticipate that the green signal controlling his movement will turn to red, or that a motorist on an intersecting highway will, during his passage, receive a green signal to proceed. A motorist *about to enter an intersection upon a yellow signal* is forewarned that the signal controlling his travel is about to turn red and that vehicles on the intersecting thoroughfare are about to obtain a green signal authorizing them to lawfully proceed. (Emphasis added.) 277 Md. at 252-53.

The Court of Appeals also noted that:

the clear import of Section 11-202 (a) (2) (i) is that a steady yellow signal puts a motorist on notice that a red signal is about to be displayed and warns him that he must be prepared to stop *should the signal change to red before he enters the intersection.* (Emphasis added.) 277 Md. at 250.

In addition, the Court, in *Haraszti, supra,* at 253, observed "that even though a motorist, facing a steady yellow light, may 'lawfully' enter an intersection, he must nonetheless exercise due care when entering and traversing the intersection as does a motorist who enters on a green signal." Thus, in a case such as the one at bar, a dual factual analysis is warranted which necessarily involves whether entry into the intersection was lawful, and whether, upon a finding of lawful entry, there was the required exercise of due care.

All the evidence and reasonable inferences therefrom viewed in a light most favorable to the appellants indicate that the jury should have been allowed an opportunity to determine whether the appellee was, in fact, lawfully within the intersection and whether he discharged his duty to exercise reasonable care if lawfully within the intersection. In short, there was evidence adduced that the appellee was proceeding at twenty-five miles per hour, and that the light turned yellow when he was sixty feet from the intersection, facts from which the jury might have found that the light had

changed from yellow to red *before* the appellee entered the intersection.

The Court of Appeals, in *Curley v. General Valet Service,* 270 Md. 248, 311 A. 2d 231 (1973), stated its position on the question of the submission of questions of negligence to a jury as follows:

> We said in *Fowler v. Smith,* 240 Md. 240, 246-247, 213 A. 2d 549 (1965) that negligence is a relative term, to be decided upon the facts of each particular case; that ordinarily it is a question of fact to be determined by the jury; that before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn; that "Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury"; that the rule requires submission of the case to the jury if there be any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury; that to meet the test of legal sufficiency, the party having the burden of proving another party guilty of negligence cannot sustain this burden "by offering a mere scintilla of evidence amounting to no more than a surmise, possibility, or conjecture, that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value." To like effect, see *Richardson v. Rice,* 256 Md. 19, 259 A. 2d 251 (1969); *Williams Construction Co. v. Construction Equipment, Inc.,* 253 Md. 60, 251 A. 2d 864 (1969); *Snowhite v. State* [243 Md. 291, 221 A. 2d 342 (1966)]. The test of legal sufficiency, we have held, "is whether the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational

conclusion therefrom in support of the right of the plaintiff to recover." *Stein v. Overlook Joint Venture,* 246 Md. 75, 81, 277 A. 2d 226, 230 (1966).

On the issue of contributory negligence, the Court of Appeals in citing *Balto. Transit Co. v. Castranda,* 194 Md. 421, 434, 71 A. 2d 442 (1950), said in *Baltimore & O.R.R. v. Plews,* 262 Md. 442, 454, 278 A. 2d 287 (1971) that:

> In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds.

We are unable to characterize the evidence in the present case as leaving "no room for difference of opinion." On the contrary, questions remain as to whether the appellee was lawfully within the intersection, and whether the light facing the appellants' vehicle changed green and remained at that stage for four seconds before the appellants ventured into the intersection. These questions, had they been propounded to the jury under proper instructions, would have produced a determination as to whether the appellants were guilty of contributory negligence. Additional factual considerations that should have been submitted to the finders of fact included: whether the appellants should have seen the appellee's vehicle; whether the appellants' failure to see the vehicle was the proximate cause of the accident, and whether the appellants were negligent in entering the intersection.

Appellant next contends that the trial court erroneously precluded him from testifying as to the calculation of his lost income resulting from the accident. We do not agree. The record discloses that the appellant was employed as district sales manager of a newly formed corporation two days prior to the accident. Compensation was to be on a commission basis. No sales had been made by the appellant prior to the accident. Wright sought to testify concerning the reasonable amount of commissions he might have expected to earn had

it not been for the injuries and loss of transportation incident to the accident. We believe *Waltring v. James,* 136 Md. 406, 111 A. 125 (1920) is controlling here. In that case, plaintiff sought to compute loss of earnings on the basis of two periods of temporary employment. The Court held that those periods of temporary employment were insufficient to form an adequate basis for a determination of loss of earning capacity. In this case, not even temporary employment figures were offered to support appellant's calculations. Although the facts are not exactly on point with those in this case, the reasoning of the Court of Appeals in *United Railways Co. v. Riley,* 109 Md. 327, 340, 71 A. 970 (1909) is applicable. In that case, the plaintiff attempted to introduce evidence of his intention immediately prior to the accident to enter into a new business. In holding this evidence was not admissible, the Court said:

> This evidence was doubtless offered for the purpose of enhancing the damages, by showing that before the accident he had good business prospects, which he lost in consequence thereof, and was clearly inadmissible. [T]he rule [is] that "when a new business or enterprise is floated, and damages by way of profit are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation."

Finally, the appellant contends that the trial judge erred in not permitting the appellant to offer into evidence the medical bills received from the attending physician to corroborate the extent of his pain and suffering. We find no merit in this contention. We see no relevance in the submission of a bill for services submitted by a physician to the severity of appellant's pain and suffering. The doctor was not offered as a witness either for direct testimony or for cross-examination. The appellant, himself, had testified extensively concerning the pain and suffering experienced because of his injuries.

The trial court was correct in refusing the doctor's bill when offered by the appellant.

*Judgment reversed.*
*Remanded for new trial.*
*Costs to be paid by appellee.*